1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10  BLACK & VEATCH CORPORATION,                    CASE NO. 1:11-cv-00695-LJO-SKO

11                        Plaintiff,               **ORDER GRANTING CITY OF
                                                   MODESTO'S MOTION FOR**
12                                                 **INTERVENTION AS A DEFENDANT**
        v.
13                                                 (Docket No. 25)
    MODESTO IRRIGATION DISTRICT,
14
15                        Defendant.
16  _____
17  MODESTO IRRIGATION DISTRICT,
18                        Counterclaimant,
19
        v.
20
    BLACK & VEATCH CORPORATION,
21
                          Counterdefendant.
22
23  _____
    AND RELATED ACTIONS.
24
25  _____/
26              **I.   INTRODUCTION**
27          On August 19, 2011, the City of Modesto ("City") filed a motion for intervention as a
28  defendant in the action between Plaintiff Black & Veatch Corporation ("B&V") and Defendant

Modesto Irrigation District ("MID").[1]  (Doc. 25.)  City asserts that it is a real party in interest in the case and that MID may not adequately represent City's interest.  On September 7, 2011, B&V filed an opposition (Doc. 34) and on September 14, 2011, City filed a reply (Doc. 39).  On September 21, 2011, a hearing was held before the Court.

The Court has reviewed the pleadings and supporting documents and considered the arguments raised at the hearing.  For the reasons set forth below, the Court GRANTS City's motion for intervention as a defendant in this action.

## II.   PROCEDURAL BACKGROUND

On April 29, 2011, B&V filed a complaint against MID, alleging claims for (1) breach of written contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) declaratory relief.  (Doc. 1.)  On May 23, 2011, MID filed a motion to dismiss, which was denied by the Court on July 5, 2011.  (Docs. 7, 13.)

On July 25, 2011, MID filed an answer and a counterclaim against B&V.  (Docs. 16, 17.)  MID's counterclaim pleads causes of action for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) professional negligence, (4) breach of fiduciary duty, (5) negligent representation, (6) express contractual indemnity, (7) unjust enrichment, and (8) declaratory relief.  (Doc. 17.)

On August 8, 2011, MID filed a complaint-in-impleader as a third-party plaintiff against third-party defendants Western Summit Constructors, Inc. ("Western Summit"), Big B Construction, Inc. ("Big B"); Federal Insurance Company ("FIC"); Fidelity and Deposit Company of Maryland ("Fidelity"); and Travelers Casualty and Surety Company of America ("Travelers")  pursuant to Federal Rule of Civil Procedure 14(a).  (Doc. 22.)  MID alleges claims for (1) express contractual indemnity against Western Summit and Big B, (2) total equitable indemnity against Western Summit and Big B, (3) comparative equitable indemnity against Western Summit and Big B, (4) breach of contract against Western Summit, (5) breach of express warranty against Western Summit, (6) negligence and property damage against Western Summit, (7) negligence and property damage

---

[1]  This motion was originally noticed before Judge Lawrence J. O'Neill, who on August 22, 2011, ordered that the motion be reset and heard by Magistrate Judge Sheila K. Oberto.  (Doc. 31.)

1   against Big B, (8) breach of implied warranty of merchantability against Big B, (9) breach of implied

2   warranty of fitness against Big B, (10) breach of implied warranty of workmanship against Big B,

3   (11) negligent misrepresentation against Western Summit, (12) recovery under performance bond

4   against FIC, Fidelty, and Travelers, and (13) declaratory relief.  (Doc. 22.)

5        On August 19, 2011, City filed this instant motion to intervene as a defendant, asserting that

6   it is a real party in interest in the action and that MID may not adequately represent its interests.

7   (Doc. 25.)  B&V opposed the motion, and City filed a reply.  (Docs. 34, 39.)  On September 21,

8   2011, the Court held a hearing on the instant motion.

9        The Court notes that on September 9, 2011, and September 16, 2011, Western Summit and

10  Big B, respectively, filed motions to dismiss MID's complaint-in-impleader.  (Docs. 38, 40.)  Both

11  motions are scheduled for hearing on October 24, 2011, before District Judge O'Neill.

12              **III.   FACTUAL BACKGROUND**[2]

13       In 1992, City and MID entered into a contract to complete Phase 1 of the Modesto Regional

14  Water Treatment Plant (the "Project"), and further contemplated the Phase 2 Expansion at that time.

15  (Doc. 30, Ulm Decl., ¶ 2.)  Pursuant to the 1992 Agreement, City and MID formed a Technical

16  Committee and a Policy Committee to oversee all phases of the Project.  (Doc. 30, Ulm Decl., ¶ 4.)

17  In November 2001, MID began a comprehensive consultant selection process for the Phase 2

18  expansion consisting of a new 36 million-gallon-per-day water treatment expansion and

19  improvements to the existing water treatment plan.  (Doc. 30, Ulm Decl., ¶ 3;  Doc. 26, 2:11-14.)

20  As a result of this selection process, B&V was selected to provide consulting engineering work.

21  (Doc. 30, Ulm Decl., ¶ 3.)

22       B&V and MID entered into a written contract for the design and construction of the Phase 2

23  Expansion and Optimization of the Project, which included the expansion and improvements to the

24  existing water treatment plan.  (Doc. 1, ¶¶ 5-6; Doc. 26, 2:11-14.)  The contract was segregated into

25  three phases: the Agreement for Preliminary Design Services, dated August 4, 2003; the Agreement

26  for Preliminary Engineering Services, dated November 25, 2003; and the Agreement for

27

28       [2] The factual background is compiled from B&V's complaint, MID's counterclaim, and the arguments presented
in the pleadings for this motion.

Construction Phase Services, dated April 20, 2007 (collectively, the "MID-B&V contract"). (Doc. 1, ¶ 13.)  The Construction Phase Services Agreement ("Construction Phase Agreement") outlined three main categories of work: (1) the engineering and construction management services during the construction phase, (2) limited start-up, commissioning, and training services, and (3) configuration services.  (Doc. 1, ¶ 14).  The base scope services were to have been completed no later than December 2009.  (Doc. 1, ¶ 15.)

In October 2005, City and MID entered into an Amended and Restated Treatment and Delivery Agreement ("T&D Agreement") in which MID would provide and increase the long-term source of City's treated water supply.  (Doc. 26, 3:18-26; Doc. 30, Ulm Decl., ¶ 8; Doc. 34, 2:14-18.)  Pursuant to the terms of the T&D Agreement, MID agreed to expand its existing water treatment plant for City's exclusive use, and City would be responsible for the costs of the Project.  (Doc. 26, 2:24-3:3; Doc. 30, Ulm Decl., ¶ 9.)

The construction phase of the Project commenced in June 2007 after MID's construction contract was awarded to Western Summit, the Project contractor.  (Doc. 1, ¶ 8.)  The Project's contract completion was originally scheduled for September 2009.  (Doc. 1, ¶ 8.)

B&V's complaint alleges that in December 2009, MID and B&V discussed amending the Construction Phase Agreement to include further construction phase work that extended beyond the original 2009 completion date and to provide compensation for those services.  (Doc. 1, ¶ 15.)  B&V submitted to MID Proposed Amendment No. 8 in January 2010 and, upon request for a revised proposal, submitted Proposed Amendment No. 8A on February 26, 2010.  (Doc. 1, ¶¶ 19-21.)  B&V contends that it provided additional services throughout 2010 at MID's direction through its authorized agents and that MID assured B&V that its requests for a contract amendment and additional compensation would be timely and fairly addressed.  (Doc. 1, ¶ 17.)

B&V claims that it notified MID that B&V had significantly increased its field staffing pursuant to the increased work requested by MID and that B&V would remain at the Project site while Western Summit completed the Project.  (Doc. 1, ¶ 21.)  Western Summit allegedly forecast a completion date extending to December 2010 and possibly into 2011, more than one year beyond B&V's contracted construction phase duration.  (Doc. 1, ¶ 21.)

In May 2010, MID issued to Western Summit a Notice of Intent to Terminate Western Summit's performance under the contract. (Doc. 1, ¶ 27.) At the same time, MID allegedly assured B&V that MID would work in good faith to resolve the issues of compensation but requested that the resolution take place after MID's formal decision regarding its intention to terminate Western Summit. (Doc. 1, ¶ 27.) In May and June 2010, allegedly pursuant to MID's oral and written directives, B&V worked with Western Summit and MID to develop a plan for Western Summit to cure and further mitigate construction delays. (Doc. 1, ¶ 28.) Western Summit's cure plan was implemented throughout the summer of 2010. (Doc. 1, ¶ 29.)

On August 18, 2010, B&V submitted an invoice to MID for services allegedly performed at MID's direction between March and August 2010 for which B&V had not been paid. (Doc. 1, ¶ 30.) On September 17, 2010, MID informed B&V that it was recommending to its Board that other firms be retained to complete the Project and that B&V cease further construction phase services and remove itself from the Project site. (Doc. 1, ¶ 31.)   MID allegedly failed to grant an equitable adjustment to B&V's compensation for the additional work performed and refused to pay any of B&V's outstanding invoices. (Doc. 1, ¶ 32.)

MID's counterclaim alleges B&V's construction phase services commenced in June 2007 after MID's construction contract was awarded to Western Summit. (Doc. 17, ¶ 18.) During the construction phase, MID alleges that the construction was behind schedule, there were numerous engineering defects and errors attributable to B&V, and widespread quality control errors by Western Summit that were not adequately addressed by B&V in its capacity as construction manager. (Doc. 17, ¶ 19.) MID pleads that B&V's failure to fulfill its duties as the construction manager resulted in damages and a widespread overpayment by MID. (Doc. 17, ¶ 23.) As a result, in September 2010, MID suspended its contract with B&V and was required to retain other professionals to rectify the substantial problems caused by B&V. (Doc. 17, ¶ 24.)

MID's complaint-in-impleader alleges that Western Summit and Big B entered into a written subcontract agreement. (Doc. 22, ¶ 20.) During construction, MID discovered numerous defects and deficiencies with Western Summit and Big B's work, which substantially delayed the project

1  and prevented its completion.  (Doc. 22, ¶¶ 23-24.)  The Project currently remains incomplete.

2  (Doc. 1, ¶ 8.)

3  ### IV.   DISCUSSION

4  **A.   B&V's Objections to City's Reply**

5  On September 16, 2011, B&V filed objections to City's reply, specifically objecting to the

6  declaration of City's counsel Patricia Lakner ("Lakner Decl.") and to City's reply argument.  (Doc.

7  43.)  B&V objects to the Lackner Decl. on grounds of hearsay, privilege, confidential mediation

8  privilege, identification, relevance, and prejudice and confusion.  (Doc. 43, p. 2.)  B&V objects to

9  City's reply argument as assuming facts not in evidence, lacking foundation, and speculation.

10  For a motion for intervention, the Ninth Circuit requires a district court to "take all

11  well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or

12  answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other

13  objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir.2001); *see also*

14  *Gen. Elec. Co. v. Wilkins*, No. 1:10-cv-00674 OWW-JLT, 2011 WL 533549 at *1 (E.D.Cal. Feb. 11,

15  2011).  City's allegations do not appear to be frivolous or sham pleadings, and the Court accepts

16  City's arguments and declarations as true for purposes of this motion.[3]

17  Further, while courts are generally constrained to consider only admissible evidence in the

18  context of summary judgment motions, *see, e.g., Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d

19  665 (9th Cir. 1980), this is not universally applicable with regard to nondispositive motions filed

20  early in the proceedings.  *See, e.g.*, *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)

21  ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes

22  it difficult to obtain affidavits from persons who would be competent to testify at trial.  The court

23  may give even inadmissible evidence some weight . . .")*; Mujica v. Occidental Petroleum Corp*., 381

24  F. Supp. 2d 1134, 1144 (C.D. Cal. 2005) ("Since a determination regarding dismissal on the basis

25  of forum non convienens should be made early in the litigation and there will have been little

26

27  _____

   [3] The Court notes that B&V's objection to the Lakner Decl. based on the "confidential mediation privilege" is
28  raised pursuant to California Evidence Code Section 1119; B&V does not cite to a similar federal code to support this
   objection.

discovery, the court should not be restricted in considering only admissible evidence.") *See also Rosen Entm't Sys., LP v. Eiger Vision*, 343 F. Supp. 2d 908, 912 (C.D. Cal. 2004) (citing *Harvey* and determining that inadmissible evidence offered by defendant opposing motion for preliminary injunction may be considered by the court); *Martinez v. Schwarzenegger*, No. C 09-02306 CW, 2009 WL 1844989, at *3 n.4 (N.D. Cal. June 26, 2009) (determining that the court may consider inadmissible evidence on a motion for preliminary injunction).  As a motion for intervention is a motion decided early in the proceedings similar to a preliminary injunction and a motion for forum non convienens, the Court finds that it may consider the submitted evidence.

Accordingly, the Court OVERRULES B&V's objections to City's reply.

**B.    B&V's Request for Judicial Notice**

B&V's opposition contains a Request for Judicial Notice ("RJN") of the existence and content of the T&D Agreement between MID and City, and the MID-B&V contracts, including the Agreement for Preliminary Design Services, the Agreement for Preliminary Engineering Services, and the Agreement for Construction Phase Services, for Phase 2 Expansion and Optimization of the Modesto Regional Water Treatment Plant.  (Doc. 36, RJN, Exhs. A-D.)

Federal Rule of Evidence 201(b) applies to judicial notice of adjudicative facts and provides:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

In application, a court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  However, a court's power to take notice of public records does not confer upon it the power to take judicial notice of disputed facts stated in public records. *Id.* at 690 (noting that lower district court did more than take judicial notice of undisputed matters of public record).

B&V contends that the submitted documents are public records since they were received pursuant to the California Public Records Act ("CPRA").  (Doc. 36, RJN, ¶ 3; Doc. 35, Hyndman Decl., ¶¶ 2-14.)  A court may take judicial notice of a public record which has a "direct relation to the matters at issue," but only of the existence of those matters (i.e., the existence of a public

document or of representations in the document); the court cannot take judicial notice of the veracity of arguments or disputed facts in the document. *George W. v. U.S. Dept. of Educ.*, 149 F.Supp. 2d 1195, 1199 (E.D. Cal. 2000); *Cactus Corner, LLC, v. U.S. Dept. of Agric.*, 346 F.Supp. 2d 1075, 1099 (E.D. Cal. 2004).   The existence and authenticity of a public record is judicially noticeable – such as the authenticity and existence of a particular order, pleading, public proceeding, or census report – but the veracity and validity of their contents, such as the underlying arguments made by the parties, disputed facts, and conclusions of fact, are not.  *Cactus Corner,* 346 F.Supp. 2d at 1099.

Therefore, the Court GRANTS B&V's request for judicial notice only as to the existence of the documents; the Court DENIES B&V's request for judicial notice as to the veracity and validity of the contents of the documents.

Nonetheless, as indicated above regarding B&V's objections, the Court may consider inadmissible evidence when determining a nondispositive filed early in the proceedings.[4]  *See Harvey*, 734 F.2d at 1394; *Mujica*, 381 F. Supp. 2d at 1144; *Rosen Entm't Sys.,* 343 F. Supp. 2d at 912.  Accordingly, the Court may consider the contents of the T&D Agreement and the MID-B&V contracts, although B&V's request seeking judicial notice of the contents of the documents must be denied.

## C.   City's Motion for Intervention

Federal Rule of Civil Procedure 24 provides for two types of intervention – intervention of right and permissive intervention.  City seeks to intervene on both grounds.

### 1.   Legal Standard

Federal Rule of Civil Procedure 24(a) addresses intervention of right and provides:

> On timely motion, the court must permit anyone to intervene who:
>
> . . .
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

---

[4] The Court makes no determination at this point in the proceedings concerning the admissibility of the documents submitted with B&V's RJN.

Rule 24(b)(1) addresses permissive intervention and states in pertinent part:

> On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
>
> (B) has a claim or defense that shares with the main action a common question of law or fact.

### 2.      Intervention of Right

There are "four requirements for intervention as of right: timeliness, an interest relating to the subject of the action, practical impairment of the party's ability to protect that interest and inadequate representation by the parties to the action. The rule is construed broadly in favor of applicants for intervention." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd*, 64 F.3d 1266 (9th Cir. 1995).

#### a.      Timeliness

City's motion is timely.  Three factors are used to determine timeliness: (1) the stage of the proceedings, (2) the prejudice to the parties, and (3) the reason for and length of the delay.  *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990).  This action was filed on April 29, 2011; MID filed a motion to dismiss on May 23, 2011, which was denied on July 5, 2011.  (Docs. 1, 7, 13.)  As such, this action is still in the early stages.  There is no apparent prejudice to the parties regarding City's timing, nor does B&V argue that City's motion was untimely.  Further, any delay appears reasonable.  City states that it learned on May 13, 2011, that MID is taking the position that it will pass the cost of this litigation onto City as a Project cost.  (Doc. 30, Ulm Decl., ¶ 10, Exh. 2.)  City then filed this motion on August 19, 2011, a little over a month after MID's motion to dismiss was denied and it was determined that this litigation would proceed.

#### b.      Protectable Interest to the Litigation

City asserts that it has a protectable interest in the litigation for several reasons: (1) the production of treated water from the completed Project is strictly for City's use; (2) City is the entity that will benefit economically from the sale of water to its citizens; (3) since City is ultimately responsible for the costs of the construction under the T&D Agreement between MID and City, if the indemnity provision in favor of City does not apply City would be liable for the costs of this

1  litigation; and (4) under the T&D Agreement, City will be responsible for the costs of operating and

2  maintaining the Project once it is completed.  (Doc. 26, 6:18-7:4.)

3      According to City, the resolution of B&V's claim for breach of contract and MID's

4  counterclaim for negligence directly affects City's interest in receiving the product for which it

5  contracted, free of defects and fully-functional.  (Doc. 26, 7:5-7.)  City contends that its interest is

6  aligned with MID in that neither City nor MID agree that MID is in breach of its contract with B&V.

7  Further, both City and MID contend that B&V breached the contract by providing a standard of care

8  below the industry standard, including defective design and inadequate supervision of the

9  construction, causing cost overruns.  (Doc. 26, 4:6-10.)  City asserts that it will ultimately become

10 exposed to additional project costs if B&V prevails in the action and that B&V's defective work will

11 cause City to incur economic damages in the form of lost water revenues and increased operations

12 and maintenance costs.  (Doc. 26, 4:8-13.)

13     B&V argues that City has no interest or standing to bring a complaint in intervention because

14 City only has a contractual right to take or pay for the cost of water and has no contractual standing

15 with B&V.  (Doc. 37, 5:9-12.)  B&V contends that City contracted with MID such that MID has all

16 the duties and rights to contract for and design and construct the facilities from which MID will sell

17 water to City.  (Doc. 37, 5:11-13.)  Since the subject matter of the litigation is the dispute between

18 B&V and MID related to their contractual obligations, City has failed to present facts that establish

19 its interest in that dispute.  (Doc. 37, 5:17-19.)  B&V asserts that City's  claim that it is a third-party

20 beneficiary under the contract between B&V and MID is refuted by the plain language of the contract.

21 (Doc. 37, 5:19-21.)

22     "[W]hether an applicant for intervention demonstrates sufficient interest in an action is a

23 practical, threshold inquiry.  No specific legal or equitable interest need be established."  *Berg*, 268

24 F.3d at 818 (citing *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.1993)).  "It is generally

25 enough that the interest [asserted] is protectable under some law, and that there is a relationship

26 between the legally protected interest and the claims at issue."  *Id*. (citing *Sierra Club v. United*

27 *States EPA*, 995 F.2d 1478, 1484 (9th Cir.1993)).  "The applicant must satisfy each element.  'An

28 applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's

claims actually will affect the applicant.'" *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (citing *Donnelly*, 159 F.3d at 410).

The purpose of the Project is to provide treated water to City.  (Doc. 30, Ulm Decl., ¶ 8.)  In exchange for City's paying for the construction, operation, and maintenance of the Project, City is entitled to the entire output of the Project pursuant to the T&D Agreement between MID and City; City will also be responsible for the costs of maintaining the plant once construction is completed. (Doc. 30, Ulm Decl., ¶¶ 8-9.)  MID has communicated with City that it will pass the costs of the instant litigation on to City as a cost of the Project.  (Doc. 30, Ulm Decl., ¶ 10, Exh. 2.)

B&V's position seems to indicate that, because City has no interest in the contract between B&V and MID, City thus has no interest in the contractual dispute that is the subject matter of the litigation.  (Doc. 34, 5:9-16.)  However, City counters that the lawsuit is not based exclusively on the contractual dispute between B&V and MID, but actually stems from the parties' divergence concerning the quality of the design and the construction of the facilities – B&V contends that it designed and supervised construction of the project to the standards set forth by MID, and MID asserts that the project does not meet those standards.  (Doc. 39, 1:25-2:2.)

As City has a direct financial interest in the quality of the construction and output of the project, City has shown that it has an interest in the subject matter of the litigation.  (Doc. 39, 2:2-6.) City also demonstrates that it has an economic interest in the Project as a whole: the treated water will be strictly for City's use, City will benefit economically from selling the water to its citizens, City may be ultimately responsible for the additional costs of the litigation if the indemnity provision in the T&D Agreement does not apply, and City will be responsible for maintaining the costs of operating the Project once it is completed.  (Doc. 26, 6:18-7:7.)

B&V argues that a similar financial interest was rejected by the Ninth Circuit in *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981) as being too tangential to be "direct, non-contingent, substantial and legally protectable." *Id*.  However, B&V's interpretation of *Dilks* is overly broad.

In *Dilks*, the Air Line Pilots Association ("ALPA") sought to intervene as a party defendant in an action brought by a pilot against an airline; the pilot alleged that the airline violated the

collective bargaining agreement by constructively discharging him. *Id*. at 1155. The Ninth Circuit affirmed the denial of ALPA's request to intervene, finding that (1) ALPA's interest in ensuring that the collective bargaining agreement was correctly interpreted did not rise to a level of interest contemplated under Rule 24, (2) ALPA's assertion that it may be subjected to potential liability for damages if it was found that it breached its obligation of fair dealing was belied by the fact that the plaintiff was not seeking relief against ALPA and that ALPA was not foreclosed from its right to litigate separately, and (3) ALPA's assertion that it had to defend the rights of pilots junior in seniority to plaintiff was not a benefit protected from a claim for invalid discharge. *Id*. at 1157. The court further found that ALPA failed to establish that its interests were unlikely to be fully protected by the airline. *Id*.

Here, B&V asserts that since City's right to litigate would not be foreclosed by this action, City's alleged financial interests are too tangential. (Doc. 34, 6:14-17.) In *Dilks*, the Ninth Circuit determined that ALPA did not have a financial interest in the action because the plaintiff was not seeking relief from ALPA. *Dilks*, 642 F.2d at 1157. In the instant action, however, the litigants seek relief that directly impacts City financially: the resolution of B&V's claim for breach of contract and MID's counterclaim for negligence affects City's interest in receiving a product for which it contracted, both free of defects and fully functional. (Doc. 26, 7:4-7.)

As such, City has shown that it has a significant protectable interest in this litigation, namely its rights to the Project that is the subject of this dispute, as well as City's obligations and benefits conferred by the Project.

### c.    Impairment of Protectable Interest

City contends that its protectable interest will be impaired if it is unable to intervene in this action because the ultimate determination will affect City's legally protected interests in receiving the Project, for which City contracted to receive at an agreed upon sum at an agreed upon time. (Doc. 26, 8:2-5.) City asserts that the cost of the construction is ultimately borne by City and the delay in the completion affects City's current cost of water production. (Doc. 26, 8:6-8.) Further, the issue of B&V's alleged negligence may encompass future damages in terms of the Project's higher maintenance costs and decreased productivity, and if the action is litigated without addressing

the issue of City's future damages, collateral estoppel may bar City from recovering those damages in a future action.  (Doc. 8:11-13.)

B&V argues that since City is not a third-party beneficiary under the MID-B&V contract, its claims would not be barred by *res judicata*.  (Doc. 34, 7:22-27.)  Further, City's position that it is entitled to indemnification from MID establishes that City's interests will be protected, as City has not shown that MID will refuse or is unable to fulfill its indemnification obligation.  (Doc. 34, 8:1-4.)

B&V relies on *Warren v. Comm'r of Internal Revenue*, 302 F.3d 1012, 1015 (9th Cir. 2002) for the proposition that where an intervenor-applicant can protect its interests in a separate action, the court should reject the request to intervene.  (Doc. 34, 7:10-14.)  In *Warren*, a reverend brought an action for a declaration that he was entitled to claim money as a tax exclusion that he received annually from a church as a cash housing allowance; the Internal Revenue Service found the amount to be excessive because it exceeded the fair rental value of the reverend's home.  *Warren*, 302 F.3d at 1012.  The United States Tax Court ruled in favor of the reverend.  *Id*.  After the government appealed, the parties filed a stipulation to dismiss the appeal, and the court-appointed amicus Professor Erwin Chemerinsky filed an opposition to dismiss the appeal and intervene in the action.  *Id*. at 1012-13.

The Ninth Circuit denied Prof. Chemerinsky's request to intervene as a matter of right and stated the following:

> Prof. Chemerinsky does not demonstrate an entitlement to intervention as of right under Fed.R.Civ.P. 24(a). Under Rule 24(a), Prof. Chemerinsky must demonstrate a "'significant protectable interest' relating to the property or transaction that is the subject of the action." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir.1998). Prof. Chemerinsky, however, is not directly affected by the subject matter of this litigation-Rev. Warren's individual tax liability. Instead, he has a larger but more generalized interest as a taxpayer under *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), in ensuring that the government does not provide a tax subsidy for ministers in violation of the Establishment Clause. Neither the voluntary dismissal here nor the passage of the Clergy Housing Allowance Clarification Act resolves the constitutionality of § 107(2). Because Prof. Chemerinsky may raise this issue through a separate lawsuit, our denial of intervention will not impair his ability to protect his interest as a taxpayer.

*Id*. at 1015.

13

As such, *Warren* does not stand for the proposition set forth by B&V that the ability to file a separate action results in the rejection of a request for intervention, but instead sets forth that if the intervenor-applicant does not have an interest "directly affected by the subject matter of [the] litigation," the request to intervene should be rejected. Here, however, City has shown that it has an interest which is directly related to the subject of this litigation. Also, in *Warren*, Prof. Chemerinsky's ability to litigate was not impaired because the issue was not subject to collateral estoppel or issue preclusion. Here, a determination of the issues in this litigation may impact City's ability to litigate in a separate proceeding.

B&V also relies on *United States v. Alisal Water Corp.* 370 F.3d 915, 921 (9th Cir. 2004) for the assertion that an intervenor-applicant's "interests are not impaired because the court has established other means by which [the intervenor-applicant] may protect its interests." *Id*. at 921. In *Alisal*, the United States brought environmental enforcement action against municipal water systems and their owners and operators for violations of Safe Drinking Water Act; the judgment creditor brought a motion to intervene as matter of right, which was denied. *Id*. at 915. The intervenor-applicant's sole interest in *Alisal* was the prospective collectability of a debt. *Id*. at 920. The court found that "the impaired ability to collect judgments that may arise from future claims does not give rise to a right of intervention." *Id*. (citing *Hawaii-Pacific Venture Capital Corp. v. H.B. Rothbard*, 564 F.2d 1343, 1346 (9th Cir.1977)). As such, the court held that the judgment debtor "was not entitled to intervene in this case because its interest in the prospective collectability of the debt secured by Alisal's property is not sufficiently related to the environmental enforcement action brought by the United States." *Id*. at 920-21.

Here, however, City is not seeking to enforce a debt collection claim but is seeking to enforce its rights as a purported third-party beneficiary under the MID-B&V contract. City also seeks to enforce any rights that may have arisen from the breach of contract and negligence issues concerning the quality of the Project that are being litigated in this lawsuit, including the question of future damages potentially resulting from the issues surrounding from the alleged construction defects. City has thus shown that its interest is related to the issues being litigated in this action and that its protectable interests may be impaired by the outcome of this litigation.

1              **d.       Adequacy of Representation**

2         "In assessing whether a present party will adequately represent an intervenor-applicant's

3    interests, we 'consider several factors, including whether [a present party] will undoubtedly make

4    all of the intervenor's arguments, whether [a present party] is capable of and willing to make such

5    arguments, and whether the intervenor offers a necessary element to the proceedings that would be

6    neglected.'  The burden of showing inadequacy of representation is minimal and 'is satisfied if the

7    applicant shows that representation of its interests 'may be' inadequate. . . .'" *Prete v. Bradbury*, 438

8    F.3d 949, 958 (9th Cir. 2006) (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir.

9    1983)).  This requirement must nevertheless be satisfied:

10

11              Although the burden of establishing inadequacy of representation may be
                minimal, the requirement is not without teeth:

12              The most important factor in determining the adequacy of representation is
                how the interest compares with the interests of existing parties. When an
13              applicant for intervention and an existing party have the same ultimate
                objective, a presumption of adequacy of representation arises. If the
14              applicant's interest is identical to that of one of the present parties, a
                compelling showing should be required to demonstrate inadequate
15              representation.

16    *Id*. (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.2003)).

17         Here, City indicates that its interests are not identical to MID's interest because City's

18    damages are broader than the damages asserted by MID.  City alleges that it has damages caused by

19    the delay of the Project, such as higher costs for water production after the date the improvements

20    to the water plant were to have been completed.  (Doc. 39, 3:25-4:1.)  While these damages may be

21    related to the current disputes in this litigation, the damages regarding City's costs caused by the

22    delay belong to City alone and cannot be claimed by MID.  (Doc. 39, 4:1-4.)  Further, counsel for

23    both City and MID indicated at the hearing that MID cannot adequately represent City's interests and

24    that City may have damages which are broader than those sought by MID.  As such, City has met

25    the burden of showing that the "representation of its interests 'may be' inadequate.'" *Prete*, 438 F.3d

26    at 958.

27         B&V argues that City must instead make a compelling, not simply a minimal, showing that

28    its interest will be impaired because "'[t]here is also an assumption of adequacy when the

15

government is acting on behalf of a constituency that it represents. In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest.'" *Prete*, 438 F.3d at 956 (quoting *Arakaki*, 324 F.3d at 1086.) B&V thus asserts that because MID is a publicly-owned utility, this presumption of adequacy can only be overcome by a compelling reason – a burden that City has not met. However, City is not a citizen of MID, but is in and of itself a government entity. B&V provided no authority, both in its opposition or at the hearing, for the assertion that City, a government entity, is a "constituent" or "citizen" of a public utility company.

Not surprisingly, the Court was unable to locate any authority directly on point. However, in cases finding that the government defendants adequately represented the interests of the intervenor-applicants, the intervenor-applicants were not other government entities. For example, in *Prete*, petition gatherers sued the Secretary of State of Oregon, contending that Oregon's Ballot Measure 26, which prevented initiative signature gatherers from being paid based on the number of signatures they gathered, violated the First Amendment. *Id*. at 951-52. The Oregon AFL-CIO and its president sought to intervene as defendants, as they were a major supporter and chief petitioner of Measure 26. *Id*. at 952. The Ninth Circuit found that the "defendant, as Oregon's Secretary of State, [was] undoubtedly familiar with the initiative process and the requisite signature-gathering; indeed, defendant is the government party responsible for counting the signatures." *Id*. at 958. As such, the union and its president's interests were adequately represented by the government. *Id* at 958-59.

Likewise in *Arakaki*, native Hawaiians sought to intervene as defendants in a lawsuit challenging the Hawaiian government regarding homestead benefits received by native Hawaiians. 324 F.3d at 1081. The Ninth Circuit found that the State defendants adequately represented the interests of the Hawaiian citizens. *Id*. at 1087. As such, the courts have found that non-government entities are often adequately represented by government entities.

Further, not all cases in which a government is a party result in the finding that the government will adequately represent the interest of the intervenor-applicants. For example, in *Citizens for Balanced Use v. Montana Wilderness Association*, 647 F.3d 893 (9th Cir. 2011), three

conservation groups sought to intervene as defendants on the side of the government in an action brought by an advocacy group challenging an interim order issued by the United States Forest Service limiting snowmobiles and other motorized vehicles. *Id*. at 895.  The Ninth Circuit allowed intervention as a matter of right, finding that the conservation groups' interest would not be adequately represented by the government, which was simultaneously seeking to appeal the interim order that it had issued reluctantly and that it was now required to defend; the court found that there was thus "sufficient reason to doubt the adequacy of the Forest Service's representation." *Id*. at 900.

Here, City is a government entity, not a non-government entity that is being represented by the government.  Further, City has shown that MID may not adequately represent City's interests.  Since City has refused MID's demand to fund the costs of the litigation, MID is seeking to arbitrate the issues of whether MID's litigation costs are a Project cost as defined in the T&D Agreement and should be borne by City.  (Doc. 39, 3:18-20.)  City asserts that MID is at risk for not having the funds to fully litigate B&V's action; as such, any ultimate payment of B&V's claim may fall upon City.  (Doc. 39, 3:20-24.)  City further contends that City has additional damages exceeding MID's and MID would not adequately represent City's damages claim.  (Doc. 39, 3:25-27.)  City asserts that MID has no interest in the functionality of the Project since, under the T&D Agreement, City will be the beneficiary of the water output and responsible for the cost of the upkeep.  (Doc. 26, 9:11-13.)  City may also have damages caused by the delay in the completion of the Project, such as the higher costs of water production.  (Doc. 39, 3:27-4:1.)  City contends that such damages belong to City alone and cannot be asserted by MID; as such, MID is not in a position to adequately represent City's interests due to B&V's conduct purportedly delaying the Project.  (Doc. 39, 4:1-4.)  At the hearing, both counsel for City and MID agreed that MID may not adequately represent City's interest.

B&V contends that City fails to present any evidence showing that MID will not adequately represent City's interest.  However, as indicated above, the Ninth Circuit requires a district court to "take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Berg*, 268 F.3d at 820.  As such, the Court must accept City's allegations and declarations as true.

1  B&V also argues that City would bring nothing new to this action and that its proposed

2  complaint is virtually identical to MID's counterclaim.  (Doc. 34, 8:26-27.)  However, although City

3  and MID's claims may be similar, their damage claims may not be identical as City's damages may

4  exceed MID's damages.  Further, there also appears to be a dispute concerning indemnification

5  between City and MID and whether City is responsible for the costs of this litigation.  As such, the

6  Court finds that City has shown that MID may not adequately represent City's interest.

7  As such, City has met all the factors to intervene as a matter of right.  Specifically, City's

8  motion was timely, City has a protectable interest, that interest may be impaired, and MID may not

9  adequately represent City's interest.  As such, the Court allows intervention.

10  **3.  Permissive Intervention**

11  Alternatively, the Court also finds that City's request to intervene permissively has merit.

12  Rule 24(b)(1)(B) provides that the court may permit intervention by anyone who "has a claim or

13  defense that shares with the main action a common question of law or fact."

14  As such, Rule 24(b) allows a third party to intervene in an action when its "claim or defense

15  and the main action have a question of law or fact in common." The existence of a "common

16  question" is liberally construed. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir.1977).  The

17  question of whether a party will be allowed to intervene is within the sound discretion of the trial

18  court. *See Donnely v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *Venegas v. Skaggs*, 867 F.2d

19  527, 530 (9th Cir.1989) ("Rule 24(b) necessarily vests 'discretion in the district court to determine

20  the fairest and most efficient method of handling a case. . . .'") (quoting *Sec. & Exch. Comm'n v.*

21  *Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir.1972)).

22  "In exercising its discretion the court shall consider whether the intervention will unduly

23  delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b)(3).  In

24  addition, a court may consider other factors, including whether the movant's interests are adequately

25  represented by existing parties and judicial economy concerns. *Venegas*, 867 F.2d at 530-31.

26  "An applicant who seeks permissive intervention must prove that it meets three threshold

27  requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is

28  timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims."

1  *Donnelly*, 159 F.3d at 412 (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir.

2  1996)).

3     However, "[t]he existence of a common question of law or fact does not automatically entitle

4  an applicant to intervene. Rather, Rule 24(b) necessarily vests 'discretion in the district court to

5  determine the fairest and most efficient method of handling a case. . . .'" *Venegas v. Skaggs*, 867

6  F.2d 527, 530 (9th Cir. 1989).   The court has broad discretion when determining permissive

7  intervention, and "must consider whether intervention will unduly delay the main action or will

8  unfairly prejudice the existing parties." *Donnelly*, 159 F.3d at 412 (citing *Skaggs*, 867 F.2d at 530.)

9  Further, the court "should evaluate whether the movant's 'interests are adequately represented by

10  existing parties.'"  *Skaggs*, 867 F.2d at 530.

11     B&V contends that City should not be permitted to intervene for the same reasons that it is

12  not entitled to intervene as of right, namely that City would bring nothing new to the litigation and

13  that City's intervention would add a party who will be presenting the exact same case as MID, thus

14  unnecessarily increasing the cost of litigation.  (Doc. 34, 10:1-6.)  However, as set forth in section

15  C, subsection 2(d), *supra*, City has adequately shown that MID may not fully protect City's interests.

16  Further, as set forth in section C, subsections 2(b)-(d), *supra*, City has shown that it has an interest

17  that shares a common question of law and fact with the main issues of this action and that its

18  damages may not be identical to the damages sought by MID.

19     City's motion was timely and City's claims, as discussed above, share common questions of

20  law and fact with the main action, specifically as to how its financial obligations and costs may be

21  impacted based on the outcome of the litigation.  (Doc. 26, 9:27-10:2.)  Further, the Court has

22  independent jurisdiction over City's claims pursuant to 28 U.S.C. Section 1332, which gives district

23  courts original jurisdiction over civil matters in which the controversy exceeds $75,000 and there

24  is a diversity of citizenship.  Although a state is not a citizen for diversity purposes, "a political

25  subdivision of a State, unless it is simply 'the arm or alter ego of the State,' is a citizen of the State

26  for diversity purposes." *Moor v. Alameda County*, 411 U.S. 693, 717 (1973).

27

28

1   For the reasons set forth above regarding City's ability to intervene as a matter of right

2   regarding its potential claims, the "fairest and most efficient method of handling [this] case" is to

3   permit intervention.  Accordingly, permissive intervention is appropriate.

4   **4.    City's Counterclaim**

5   B&V contends that City's counterclaim fails to state a cause of action.  B&V states that City

6   cannot assert a breach of contract claim since it is not a third-party beneficiary to the MID-B&V

7   contract, that a purely economic claim does not allow for recovery in tort, and that the declaratory

8   relief claim improperly seeks resolution of issues that are no longer ripe for adjudication.  As such,

9   the motion for intervention should be rejected.

10   "An application to intervene should be viewed on the tendered pleadings-that is, whether

11   those pleadings allege a legally sufficient claim or defense and not whether the applicant is likely

12   to prevail on the merits." *Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d

13   72, 75 (DC Cir. 1988).  "'In determining whether intervention is appropriate, courts are guided

14   primarily by practical and equitable considerations, and the requirements for intervention are broadly

15   interpreted in favor of intervention.'" *United States v. Aerojet General Corp.*, 606 F.3d 1142, 1148

16   (quoting *Alisal*, 370 F.3d at 919.)

17   Additionally, "[a]n application for intervention cannot be resolved by reference to the

18   ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their

19   face." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999); *see also*

20   *Oneida Indian Nation v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).

21   Here, B&V does not allege that City's claims are frivolous, but instead argues the merits of

22   the viability of City's claims.  This is not appropriate for a motion for intervention.

23   **IV.    CONCLUSION AND ORDER**

24   Accordingly, IT IS HEREBY ORDERED that:

25   1.    City of Modesto's  motion for leave to file complaint-in-intervention is GRANTED;

26   and

27   ///

28   ///

20

1       2.      City of Modesto is ordered to file its answer in intervention and counterclaim within

2       two (2) days of the date of this order.

4  IT IS SO ORDERED.

5  **Dated:   October 11, 2011**               **/s/ Sheila K. Oberto**
                                 UNITED STATES MAGISTRATE JUDGE