UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK & VEATCH CORPORATION,<br><br>　　　Plaintiff,<br><br>　　　　v.<br><br>MODESTO IRRIGATION DISTRICT,<br><br>　　　Defendants. | 1:11-cv-0695 LJO SKO<br><br>ORDER ON MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO STRIKE THIRD PARTY PLAINTIFF COMPLAINT (DOCS 38, 40) |
| MODESTO IRRIGATION DISTRICT,<br><br>　　　Counter-Claimant,<br><br>　　　　v.<br><br>BLACK & VEATCH CORPORATION,<br><br>　　　Counter-Defendant. | |
| MODESTO IRRIGATION DISTRICT,<br><br>　　　Third-Party Plaintiff,<br><br>　　　　v.<br><br>WESTERN SUMMIT CONSTRUCTORS, INC., et al.,<br><br>　　　Third-Party Defendants. | |

1

# I. INTRODUCTION.

Counter-Claimant and Third-Party Plaintiff, Modesto Irrigation District ("MID") filed its Third-Party Complaint in Interpleader ("Interpleader Complaint"), naming as Defendants, Western Summit Constructors, Inc. ("Western"), Big B Construction, Inc. ("BBC") and three surety companies. Western and BBC bring this motion to dismiss MID's Interpleader Complaint. Both Western and BBC make similar arguments, contending that many of the claims in the Complaint are not properly pled, not based on a cognizable legal theory and/or are redundant of other claims.

# II. PROCEDURAL HISTORY.

On April 29, 2011, plaintiff, Black & Veatch Corporation ("B&V") filed its complaint against MID for claims relating to additional services that B&V provided as a result of MID's, Western's and/or BBC's allegedly deficient work and delay. ECF No. 1. MID counter-claimed on July 25, 2011. ECF No. 17.

On August 8, 2011, MID filed its Interpleader Complaint against, *inter alia*, Western and BBC. The relevant causes of action against Western and BBC are: (1) express contractual indemnity; (2) total equitable indemnity; (3) comparative equitable indemnity; (4) breach of contract against Western; (5) breach of express warranty against Western; (6) negligence against Western; (7) negligence against BBC; (8)  breach of implied warranty of merchantability against BBC; (9) breach of implied warranty of fitness against BBC; (10) breach of implied warranty of workmanship against BBC; and (11) negligent misrepresentation against Western. ECF No. 22. The Interpleader Complaint also includes an at-issue request for declaratory relief. *Id.*

On September 9, 2011, Western filed a motion to dismiss, or in the alternative, motion to strike portions of MID's Interpleader Complaint. ECF No. 38. On September 16, 2011, BBC filed its own motion to dismiss, or in the alternative, motion to strike portions of MID's Interpleader

2

1

2

Complaint. ECF No. 40.

3

### III. BACKGROUND.

4

MID sought to expand its existing water treatment plant through construction of a

5

36,000,000 gallon per day water treatment plant, located in Stanislaus County, California (the

6

"Project"). Interpleader Complaint ¶ 9.

7

In 2007, MID entered into a written agreement with B&V in which B&V agreed to

8

perform various construction-related services for the Project, including construction management

9

services. *Id*. ¶ 11-13. On or about June 8, 2007, Western, as prime contractor, and MID, as owner,

10

entered into a written public works contract (the "Contract"). *Id*. ¶ 17. After June 8, 2007,

11

Western hired BBC as a subcontractor and entered into a written subcontract agreement (the

12

"Subcontract") in which BBC agreed to perform concrete work on the Project. *Id*. ¶ 20.

13

During construction of the Project, MID discovered numerous alleged defects with

14

Western's work. *Id*. ¶ 23. Due to these construction defects and deficiencies, the Project was

15

delayed past the contract deadline and has not yet been completed. *Id*. at ¶ 24.

16

17

### IV. STANDARD OF DECISION.

18

A.      Motion to Dismiss.

19

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) "tests the

20

legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). In deciding

21

whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint

22

as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party.

23

*Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir.2002). To survive a motion to dismiss, a

24

complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that

25

is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp.*

26

27

28

3

*v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (*citing Twombly*, 550 U.S. 556-57).

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While the standard does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc*., 911 F.2d 242, 247 (9th Cir.1990).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Fed. R. Evid. 201. *See Mir v. Little Co. of Mary Hosp*., 844 F.2d 646, 649 (9th Cir. 1988).

B.      Motion to Strike.

Federal Rule of Civil Procedure 12(f) permits the Court to "[strike] from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f).

4

Redundant matter "consists of allegations that constitute a needless repetition of other averments in the pleading." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (1990). Immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Id*. Impertinent matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id*. Scandalous matter is "that which improperly casts a derogatory light on someone, most typically on a party to the action." *Id*.

## V. DISCUSSION.[1]

A.   BBC's and Western's Objections.

Both Western and BBC object to the use of attorney at record, Mr. Klotsche's, declaration in support of the Opposition. The objections to Mr. Klotsche's declaration are moot as the court did not consider the declaration in its decision.

Western further objects to various material in MID's Opposition. Western states that it is "improper material outside of the pleadings" and also that the material assumes facts not in evidence. These objections are moot as the court only considered MID's arguments which were based on material plead in the Interpleader Complaint.

B.   Total Equitable Indemnity (Second claim).

Both BBC and Western argue that MID's total equitable indemnity claim is not based on a cognizable legal theory and is redundant of MID's third claim for comparative equitable indemnity. Specifically, both movants assert that "while the doctrine of equitable indemnity is recognized in California, it is not divisible into causes of action that seek differing **degrees** of indemnity." Western's Mot. Dismiss ("Western MTD"), ECF No. 38, 3:26-28 (emphasis in

---

[1] Neither Western nor BBC takes issue with MID's first, third, fourth, fifth, or twelfth claims. Each of these claims remains.

5

original). MID rejoins that although its "comparative equitable indemnity claim may incorporate its total equitable indemnity claim. . . MID is unaware of any California case that bars a plaintiff from separately pleading a claim for total equitable indemnity." Opp'n to BBC, ECF No. 48, 5:7-8.

"There are not two separate equitable indemnity doctrines in California but a single 'comparative indemnity' doctrine which permits partial indemnification on a comparative fault basis in appropriate cases." *Far West Financial Corp. v. D & S Co*., 46 Cal. 3d 796, 808 (1988). For example,  it would be "[]proper, in a comparative indemnity action, for a trier of fact to determine that the facts and equities in a particular case support a complete shifting of a loss from one tortfeasor to another, rather than, for example, a 60 percent/40 percent or 95 percent/5 percent division of the loss. *Id.*; *see also E. L. White, Inc. v. City of Huntington Beach*, 138 Cal. App. 3d 366, 375-377 (1982). "Comparative equitable indemnity includes the entire range of possible apportionments, from no right to any indemnity to a right of complete indemnity. Total indemnification is just one end of the spectrum of comparative equitable indemnification." *Far West Financial Corp.*, 46 Cal. 3d at 808 (*citing Standard Pacific of San Diego v. A. A. Baxter Corp.*, 176 Cal. App. 3d 577, 587-588 (1986). Tortfeasors "are not entitled to any species of indemnity other than [] comparative indemnity." *Gentry Construction Co. v. Superior Court*, 212 Cal.App.3d 177, 183 (1989).

MID asserts a claim for both "total equitable indemnity" (second claim) and comparative indemnity (third claim), but under California law "total equitable indemnity" is part of, and included in, a claim for comparative indemnity; i.e., a claim for "total equitable indemnity" does not exist. Western's and BBC's motion to dismiss MID's second claim for relief is GRANTED WITHOUT LEAVE TO AMEND.[2]

---

[2] Because Western's and BBC's motion is granted without leave to amend, their motions to strike MID's second

C.      Negligence and Property Damage Against Western (Sixth Claim).

Western asserts that MID's sixth claim is an "untenable restatement" of its fourth and fifth contractual claims. Western further asserts that MID does not plead a duty independent of the contract because MID fails to properly assert property damage.  Western MTD, 6:2-5. MID rejoins that it properly alleged property damage. Opp'n to Western's MTD, ECF No. 47, 6:5-6.

Both parties agree that "negligent performance of a construction contract, without more, [does not] justif[y] an award of tort damages." *Erlich v. Menezes*, 21 Cal. 4th 543, 551, 550-554 (1999). "[C]onduct amounting to a breach of contract [only] becomes tortious when it also violates a duty independent of the contract arising from principles of tort law. *Aas v. Superior Court of San* Diego, 24 Cal. 4th 627, 636 (2000) (superseded by statute on other grounds).  Tort damages were initially permitted in contract cases where a breach of duty directly caused physical injury. *Elrich*, 21 Cal. 4th at 552-552 (*citing Fuentes v. Perez*, 66 Cal.App.3d 163, 168, fn. 2 (1977)). Recovery for negligence has since been expanded to include construction defects that cause property damage.  *Aas,* 24 Cal. 4th  at 637 (*citing Stewart v. Cox*, 55 Cal. 2d 857 (1961) as the first case to allow recovery in negligence for construction defects which caused property damage, and extensively analyzing cases which have allowed recovery for property damage since *Stewart*).

Property damage does not include mere economic loss, such as repair and replacement costs. *Aas,* 24 Cal.4th at 635-636. "[T]he difference between price paid and value received, and deviations from standards of quality that have not resulted in property damage or personal injury, are primarily the domain of contract and warranty law or the law of fraud, rather than of negligence. In actions for negligence, a manufacturer's liability is limited to damages for physical injuries; no recovery is allowed for economic loss alone." *Id.* (*quoting Seely v. White Motor Co.,*

claim is moot.

63 Cal.2d 9, 18 (1965). This principle is known as the economic loss rule. *Aas,* 24 Cal.4th at 635-636; *see e.g., Zamora v. Shell Oil Co.* 55 Cal.App.4th 204, 208-211 (1997) (finding homeowners were not allowed to recover in negligence for the cost of replacing water pipes known to be defective, but which had not yet leaked); *Fieldstone v. Briggs Plumbing Products, Inc.* 54 Cal.App.4th 357, 363-367 (1997) (finding that a general contractor could not be awarded the cost of replacing installed sinks that rusted and chipped prematurely, because no other property had been damaged); *San Francisco Unified School Dist. v. W.R. Grace &* Co., 37 Cal.App.4th 1318, 1327-1330 (1995) (finding that a public school district could not state a cause of action in negligence or strict liability based on the presence of asbestos products in its buildings, when the products had not contaminated the buildings by releasing friable asbestos).

Accordingly, if a complainant alleges property damage, i.e., a defect which causes harm to other portions of the property, as a result of a contractor's negligence, the complainant has alleged a duty independent of the contract. *Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979, 989 (2004) (*citing Jimenez v. Superior Court*, 29 Cal.4th 473, 482–483 (2002)).

1.      Duty Independent of The Contract.

     a.      Similarity of MID's Contractual Claims and Negligence Claim.

Western incorrectly argues that MID does not properly assert an independent duty because the allegations are the same or similar in MID's contractual and negligence claims.  Under California  law "*the same wrongful act* may constitute both a breach of contract and an invasion of an interest protected by the law of torts." *Erlich*, 21 Cal.4th at 551 (emphasis added). A plaintiff is permitted to pursue remedies in both contract and tort law provided that the actions that constitute the breach "violate a duty independent of the contract arising from principles in tort law." *Id*. (conduct amounting to a breach of contract becomes tortious when "it also violates a duty independent of the contract."); *Aas*, 24 Cal.4th at 643; *see also Robinson Helicopter Co.,*

8

*Inc.*, 34 Cal.4th at 990. Accordingly, the same conduct alleged in a contractual claim may be alleged to constitute a negligence claim so long as the conduct also violates a tortious duty.

b.      Property Damage.

Western asserts that "MID does not allege. . . damage to anything other than the property under construction itself. . . . [which] is fatal to MID's negligence claim for relief because in the absence of. . . damage to property other than the Project work itself, MID cannot avoid application of the economic loss rule." Western MTD, 10:9-11. MID rejoins that "property damage can be shown if defective portions of a construction project damage other portions of that same project," and the Interpleader Complaint pleads as such. Opp'n to Western MTD, 9:25-26.

"[T]he economic loss rule allows a plaintiff to recover in. . . tort when a product defect causes damage to 'other property,' that is, property other than the product itself." *Robinson Helicopter Co.,* 34 Cal. 4th at 989 (*citing Jimenez*, 29 Cal.4th at 482–483). Several California courts have found that a defectively constructed building is not a single defective product, but is comprised of multiple products. *See, e.g., Stearmen v. Centex Homes*, 78 Cal. App. 4th 611, 613 (2000) (plaintiff suffered property damage when defective foundations damaged walls and ceilings of newly constructed home ); *Jiminez*, 29 Cal.4th at 483 ("the economic loss rule does not necessarily bar recovery in tort for damage that a defective product (e.g., a window) causes to other portions of a larger product (e.g., a house) into which the former has been incorporated"); *Huang v. Garner*, 157 Cal.App.3d 404, 411 (1984) (allowing a negligence claim based on physical damage to the structure of the plaintiffs property caused by "defected and cracked beams and dry rot damages.") (disapproved on other grounds). "[P]hysical damage to plaintiffs' real property caused by defective construction. . . is [not solely] 'an injury to the product itself,' and [not] barred by the economic loss rule." *Stearmen*, 78 Cal. App. 4th at 617.

MID asserts that three allegations in the Interpleader Complaint demonstrate property

9

damage. First, the Interpleader Complaint alleges that "as a proximate result of [BBC's] negligence, MID has sustained … property damages." Interpleader Complaint ¶ 7. MID asserts that this allegation, in and of itself, is enough to allege property damage.  This is incorrect. The standard on a motion to dismiss "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S. Ct. at 1949. Merely stating that property damage was suffered without any factual support is exactly the kind of bare legal conclusion the court cannot accept. *Id.* ("a complaint must contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.") (emphasis added.)

Second, MID points to a single example in paragraph 23 of Interpleader Complaint which states, in part: "improperly cured membrane filter basin walls. . . have been declared defective, deficient and not in compliance with the Project documents and will, in all probability, have to be demolished and replaced along with the membrane basin floors." Based on this, MID asserts it has properly alleged that "as a result of [BBC's] defectively constructed basin walls, the Project's basin floors were damaged to the point where those floors will likely need to be demolished." *See* Opp'n to Western, 8:2-3. However, MID's Opposition overstates its pleading and inserts an allegation of property damage where none exists. *In re Daou*, 411 F.3d 1006, 1013 (2005) ("unwarranted inferences are insufficient to defeat a motion to dismiss.")  There is nothing in the actual complaint regarding what, if any, damage the membrane basin floors suffered, if the floors were even damaged by the basin walls – which is the key requirement of the claim –  or why the floors purportedly have to be removed. MID's cited language is not sufficient to plead property damage.

Last, MID's Opposition alleges that defective pipes caused property damage through the loss and contamination of water – the product MID sells. Opp'n to Western, 11:8-10. This allegation, however, is not stated anywhere in the Interpleader Complaint. It is not "proper to

10

assume that [a plaintiff] can prove facts that it has not alleged. *Associated General California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also* Fed. R. Civ. Pro. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented. . . the motion must be treated as one for summary judgment under Rule 56.") Because these allegations are not included in the Interpleader Complaint, the court may not consider the Opposition's property damage argument regarding water loss and contamination. MID does not properly plead property damage as a result.

Western's motion to dismiss this claim is GRANTED WITH LEAVE TO AMEND.[3]

D.      Negligence and Property Damage Against BBC (Seventh Claim).

MID first asserts a nearly identical claim for negligent construction against BBC; namely, that BBC's negligent construction of the basin walls damaged the basin floors. Second, although neither specifically named or articulated, MID appears to assert another negligence claim against BBC for interference with prospective economic interest ("lost economic advantage claim"), which MID claims, does not require an allegation of property damage. [4]

BBC rejoins that MID must allege property damage in order to bring any negligence claim(s), as such, MID's claim(s) fail because MID does not properly assert property damage.

1.      Duty Owed Through A Special Relationship.

MID and BBC have not directly contracted with one another and are not in privity of contract. However a contractor owes a duty to avoid injury to the person, property, or prospective economic advantage of third parties when the contractor and third party are in a "special relationship." *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 808 (1979). The court weighs the following

---

[3] Because the court grants this claim with leave to amend, Western's motion to strike this claim is moot.
[4] MID does not assert a lost economic advantage claim against Western, despite that a negligent interference claim is available even when parties are in privity of contract. *See Aas,* 24 Cal. 4th at 645 (citing cases in which the *J'Aire* special relationship factors were applied despite that the parties were in privity of contract.).

factors (the "*J'Aire* factors") to determine whether a special relationship exists: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm. *Id.* at 804.

BBC concedes that the first factor is met,[5] but takes issue with the remaining factors, predominantly as to factor three (injury) which directly affects factors two and four. *See e.g., Aas,* 24 Cal.4th at 646 ("[When injury] is lacking – to ask. . . whether the harm to plaintiffs was "foreseeab[le]. . . simply begs the question: What harm?")

2.      Must Property Damage be Pled In Order To Allege A "Special Relationship?"

The parties have a significant disagreement regarding whether the law requires an allegation of property damage in order to assert a special relationship. MID argues that if the six special relationship factors are met, it is entitled to recover economic loss damages without the need to allege property damage, citing *J'Aire*. *Id.* at 804 ("Where a special relationship exists between the parties, a plaintiff may recover for loss of expected *economic advantage* through the negligent performance of a contract.") (emphasis added.)  BBC asserts that *Aas*, a more recent case, states that property damage is a required element and as such MID's claim must be dismissed.

The apparent contradiction between the two cases is eradicated once the causes of action in each case are examined. That is, the key difference between *J'Aire* and *Aas* is that the plaintiff in each alleged different construction negligence theories which required a different "injury" to satisfy the third *J'Aire* factor. The *J'Aire* plaintiff brought a cause of action for negligent

[5] BBC concedes that if parties are designated as third party beneficiaries, they are deemed in privity and that the Interpleader Complaint properly alleges third-party beneficiary status. According to the seminal case on the subject, however, third party beneficiary status is just one of six factors which establishes a special relationship and thus a duty. *J'Aire*, 24 Cal. 3d. at 805.

*interference with prospective economic advantage* for lost profits because the plaintiff's restaurant could not operate during the alleged negligent delay in construction. *J'Aire*, 24 Cal. 3d at 803 ("The only question before this court is whether a cause of action for negligent loss of expected economic advantage may be maintained under these facts.") The *Aas* plaintiff brought a *defective construction* negligence claim, which is a claim based on injury to property. *See Aas*, 24 Cal. 4th at 633 ("Plaintiffs in each case allege their dwellings suffer[ed damage] from a variety of construction defects.")

In the former, lost economic advantage of servicing customers is the injury; in the latter property damage from defective construction is the injury. The two cases discuss two different negligence theories and cannot be applied as espousing one rule. Accordingly, under a defective construction claim the plaintiff must allege property damage as his/her injury. Under a lost economic advantage claim the plaintiff must allege a loss of prospective economic advantage as his/her injury, but the plaintiff is not required to allege property damage.

3.   Defective Construction Claim.

MID again cites paragraph 23 of the Interpleader Complaint as the allegations which demonstrate property damage. As previously found, paragraph 23 is insufficient to assert property damage. MID does not satisfy the third *J'Aire* factor and does not sufficiently allege that a special relationship pursuant to a construction defect claim exists between itself and BBC.

4.   Lost Economic Advantage Claim.

MID's Opposition to BBC appears to allege that its seventh claim is a dual negligence cause of action which asserts defective construction as well as lost economic advantage.

Where a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract *J'Aire,* 24 Cal. 3d

at 804. An expected economic advantage is not replacement or repair costs. *Aas,* 24 Cal.4th at

635-636. It is an economic relationship which existed between the plaintiff and a third party that

contained a reasonably probable future economic benefit or advantage to plaintiff. *North*

*American Chemical Co. v. Superior Court*, 59 Cal.App.4th 764, 786 (1997). In order to allege

duty, that economic advantage must have been "lost" as a result of a defendant's negligent delay

in construction and this loss must have been foreseeable. *J'Aire*, 24 Cal. 3d at 804.

MID asserts that it meets the pleading requirement because the Interpleader Complaint

asserts that construction on the Project was negligently delayed by BBC and caused MID to incur

"substantial damages." *See* Opp'n to BBC at 15:26-16:1. This unadorned and conclusory

allegation is far from satisfactory. For example, in *J'Aire* the "complaint [left] no doubt that

appellant suffered harm since it was unable to operate its business for one month and suffered

additional loss of business while the premises were without heat and air conditioning" (factor

three). *J'Aire*, 24 Cal. at 805. The defendants were renovating the plaintiff's restaurant and the

"the contract could not have been performed without impinging on that business," making it

"clearly foreseeable that any significant delay in completing the construction would adversely

affect appellant's business" (factor two). *Id*. "Appellant has also alleged that delays. . . directly

caused its [month-long loss of business]" (factor four). *Id*. Here, the Interpleader Complaint does

not allege what economic advantage was lost (factor three); how the economic loss was

foreseeable (factor two); or (factor four) how BBC's alleged delay caused the economic harm,

i.e., what does "substantial damages" mean? Does it mean lost business/profits, or simply costs of

repair? MID's Interpleader Complaint is completely devoid facts constituting duty pursuant to a

lost economic advantage claim and thus does not properly allege the claim.[6]

---

[6] When alleging the *J'Aire* duty factors for a lost economic advantage claim, MID is wise to keep in mind the specific elements of the claim since they are more particular than the *J'Aire* factors. To state this claim, a plaintiff must demonstrate: "(1) an economic relationship existed between the plaintiff and a third party which contained a

14

a.      Conclusion Re: Special Duty.

MID has not properly alleged an injury of property damage or loss of economic

advantage. MID, accordingly, does not satisfy *J'Aire* factor two, three or four under a claim for

negligent construction defect or lost economic advantage and does not sufficiently plead a special

relationship. BBC's motion to dismiss MID's seventh claim for negligence is GRANTED WITH

LEAVE TO AMEND.[7]

E.      Breach of Implied Warranty of Merchantability, Fitness and Workmanship Against BBC
        (Eight, Ninth & Tenth Claims).

As to MID's eighth and ninth claims, BBC asserts that common law claims for breach of

implied warranty of merchantability (eight claim) and breach of implied warranty of fitness (ninth

claim) were replaced or superseded in 1970 by the Song-Beverly Consumer Warranty Act

("Song-Beverly Act") and/or California Commercial Code, section 2314 ("Section 2314"). BBC

Reply, 8:14-18.  BBC further argues that MID's tenth claim is redundant of its eighth and ninth

claims. *Id.* at 9:29-10:3.

1.      Song-Beverly Act and Section 2314.

BBC asserts that MID has no remedy in common law implied warranty claims because

"case law since the adoption of [Section 2314 and the Song-Beverly Act] has ruled that the

legislation governs [] consumer protection." BBC Reply, 8:14-18. BBC erroneously cites a non-

existent case for this proposition.[8] An independent review of case law confirms this statement is

---

reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the
relationship and was aware or should have been aware that if it did not act with due care its actions would interfere
with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage
of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the
relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or
advantage reasonably expected from the relationship. *North American Chemical Co.*, 59 Cal. App. 4th  at 786.
[7] Because MID does not satisfy the second, third or fourth factors of a special relationship, it is not necessary to
address whether MID has sufficiently satisfied the fifth and sixth factors.
[8] As found through independent research, *Aced*'s determination regarding the duration of the implied warranty of
merchantability was superseded by the duration provision in the Song–Beverly Act. *Atkinson v. Elk Corp. of Texas*

15

incorrect, particularly in light of the following:  In 1974, *subsequent* to the adoption of both Section 2314 and the Song–Beverly Act, the California Supreme Court extended the theory of implied warranties to contracts for construction. *Pollard v. Saxe & Yolles Dev. Co.* 12 Cal.3d 374 (1974) (*citing Aced v. Hobbs-Sesack Plumbing Co.*, 55 Cal.2d 573, 580-583 (1961) which rejected the view that implied warranties were limited to contracts within the Uniform Sales Act, and held that an implied warranty of merchantability arises from a construction contract because the contract is one for material and labor.)

    *Siders v. Schloo*, 188 Cal.App.3d 1217, 1221 (1987) explains:

> After *Pollard* not[ed] both the general rule of caveat emptor applicable in land and building sales and the related rule that implied warranties are not generally applicable to sales of land and buildings, the court explained that exceptions to those rules had developed with regard to some construction contracts because they were essentially contracts for labor and materials. [Citation]. The court also observed that purchasers of new construction usually rely upon the expertise of the builder, being without such expertise themselves and being unable to examine the finished product without disturbing it. Accordingly, the court held that builders and sellers of 'new construction' were subject to the implied warranty that such structures have been designed and built in a reasonably workmanlike manner.

*See also Mills v. Forestex Co*. 108 Cal.App.4th 625, 636 fn. 4 (2003) ("The theory of an implied warranty of quality and fitness has been extended by the courts beyond contracts for the sale of goods to contracts for the construction of a new home, and contracts for the sale of a newly constructed home."); *Windham at Carmel Mountain Ranch Assn. v. Superior Court*, 109 Cal.App.4th 1162, 1170 (2003).

    Accordingly, the Song-Beverly Act and Section 2314 do not govern all claims for implied warranties; common law claims for implied warranties in construction contracts may be asserted.[9]

---

142 Cal. App .4th 212, 231(2006). Since timeliness is not at issue here, this has no bearing on the court's analysis.

[9] Although not argued by BBC, the court notes that many of the cases which allow breach of implied warranties in construction defect cases are limited to "new home" construction or "mass home" construction.

1

2.    <u>Redundancy of Claims.</u>

2

MID asserts three implied warranties: merchantability, fitness and workmanship.  BBC

3

argues that MID's warranty claims are redundant and at least one should be stricken.

4

An implied warranty of fitness encompasses both workmanship and materials.

5

"[C]onstruction contracts. . . give rise to *an* implied warranty that the product will be fit for its

6

intended use both as to workmanship and materials." *Aced*, 55 Cal.2d at 577 (emphasis added);

7

*see Gilbert Financial Corp. v. Steel Form Contracting Co*., 82 Cal.App.3d 65 (1978) (finding

8

privity existed therefore the plaintiff could sue for breach of the implied warranty of fitness based

9

10

on the defendant's failure to furnish proper materials and workmanship.)

11

The fitness warranty regarding workmanship ensures that the contract's work will be

12

performed "with care, skill, reasonable expedience, and faithfulness." *See Kuitems v. Covell*, 104

13

Cal. App. 2d 482, 485 (1951). The fitness warranty regarding materials ensures that the materials

14

supplied by the contractor will be fit for the project. *Aced* at 583 (finding that a steel pipe supplied

15

by the contractor which had inadequate coating was sufficient evidence for a jury to find a breach

16

17

of the implied warranty that materials would be fit for their intended use.)

18

The warranty of fitness can be applied solely as a warranty for workmanship when the

19

contractor is supplied materials and/or plans by an owner or third party. *Sunbeam Construction*

20

*Co. v. Fisci*, 2  Cal.App.3d 181, 186 ("no warranty *other than that of good workmanship* can be

21

22

implied where the contractor faithfully complies with plans and specifications supplied by the

23

owner.") (emphasis added).

24

Accordingly, the warranty of fitness guarantees two separate responsibilities of

25

contractors: (1) that they follow plans and specifications in a "workmanlike" manner, and (2) they

26

use materials that are fit for the project. The two responsibilities are not redundant and may be

27

asserted as two separate causes of action.

28

MID argues that a third warranty for merchantability is recognized in *Aced*, citing the following language:

> [F]or historical reasons warranties have become identified primarily with transactions involving the sale or furnishing of tangible chattels but that they are not confined to such transactions. Several cases dealing with construction contracts and other contracts for labor and material show that ordinarily such contracts give rise to an implied warranty that the product will be *fit for its intended use* both *as to* workmanship and *materials*. [Internal citations omitted]. . . .
>
> As we have seen, [the plaintiff] stipulated that in his action against [the defendant] he was relying solely on breach of an implied warranty of merchantability. The reference in the stipulation to merchantability, a term generally used in connection with sales, does not preclude reliance on breach of warranty although the contract is one for labor and material. With respect to sales, merchantability requires among other things that the *substance sold be reasonably suitable for the ordinary uses* it was manufactured to meet. [Internal citations omitted]. The defect of which [the plaintiff] complains is that the tubing was not reasonably suitable for its ordinary use, and his cause of action may properly be considered as one for breach of a warranty of merchantability.

*Aced*, 55 Cal. 2d 573, 582-583 (1961).

A close reading of *Aced* demonstrates that there is no distinction between "fitness of materials" and "merchantability." Immediately after explaining that construction contracts may give rise to an implied warranty that material used will be "*fit for its intended use*," *Aced* found that the plaintiff could bring a claim for beach of the implied warranty of merchantability because the material used by the defendant was not "*suitable for its ordinary use.*" Although *Aced* uses both the terms "merchantability" and "fit," they derive from identical logic and have no describable difference nor does MID attempt to explain any difference. Merchantability and fitness are not two separate warranties in the context of a construction contract.

MID's eighth claim for breach of the implied warranty of merchantability is STRICKEN as redundant.

3.   Facts Alleged to Meet the Implied Warranty of Fitness for Workmanship and Materials.

No party addresses whether the Interpleader Complaint properly alleges facts to support

the implied warranty claims. However, a district court may review and "dismiss a claim *sua sponte* under Fed.R.Civ.P. 12(b)(6)." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987).

a.    Materials.

When there are no plans or specifications which direct a contractor as to what materials should be used, the contractor assumes the responsibility that the project will be constructed properly for the owner's purposes. In such cases the contractor impliedly warrants that the materials he/she chooses will be fit for their intended use. *See Aced*, 55 Cal. 2d at 582-583 (finding breach of implied warranty for contractors use of a defective pipe when there were no plans or specifications for the particular materials to be used and contractor supplied the pipe); *cf. Sunbeam*, 2 Cal. App. 3d at 186 (finding contractor cannot be held liable for breach of implied warranty where the materials used complied with plans and specifications).

The Interpleader Complaint alleges: "As a concrete contractor and to the extent that [BBC] chose the manner of construction and materials for its concrete work, [BBC] impliedly warranted to MID, as a third party beneficiary of [BBC's] Subcontract, that its work was of merchantable quality and reasonably fit and suitable for its general purpose and ordinary use." Interpleader Compl. ¶ 63.[10] This, in and of itself, is not sufficient to allege the claim. A complaint must "contain sufficient *factual* matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added).

Further, MID does not allege that a breach actually took place. Paragraph 63 states: "*to the extent*. . . BBC chose. . .  materials for its concrete work, [BBC] impliedly warranted" that those materials would be fit for their intended use. The phrase "to the extent" demonstrates that MID is

---

[10] MID explains that *Western* "agreed to 'furnish all labor, material, tools, apparatus, equipment, insurance, bonds, special services and skill to construct and complete [the Project] in good workmanlike and substantial manner." Interpleader Complaint 5:13-13. However, MID does not do the same as to BBC, the party this claim is alleged against.

19

unaware whether BBC used its own materials and therefore unaware whether a breach of the

implied warranty of fitness occurred. "[A] complaint ... must contain either direct or inferential

allegations respecting *all the material elements* necessary to sustain recovery under some viable

legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d

1101, 1106 (7th Cir.1984) (emphasis added).

To state a claim properly, MID must allege facts that demonstrate BBC used its own

materials and that those materials were defective. BBC's motion to dismiss MID's ninth claim for

relief is GRANTED WITH LEAVE TO AMEND.

        b.    <u>Workmanship.</u>

"Accompanying every contract is a common-law duty to perform with care, skill,

reasonable expedience, and faithfulness the thing agreed to be done." *Kuitems v. Covell*, 104 Cal.

App. 2d 482, 485 (1951).

The Interpleader Complaint lists numerous defects in paragraph 23, but does not delineate

which defects are attributable to BBC's work as opposed to Western's, state that any of BBC's

defects were the result poor workmanship, or that state BBC's defects caused delay. This makes

the claim insufficient. Fed. R. Civ. Pro. 8 requires a short and plain statement of the claim that

will give BBC fair notice of what MID's claim is and the grounds upon which it rests.

Paragraphs 67 and 68 state that BBC breached the implied warranty because the Project

was not free from defects and deficiencies, but this, in and of itself, is not sufficient to allege the

claim. *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (A complaint must "contain sufficient *factual* matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'") (emphasis added).

MID must assert some facts which demonstrate that BBC's poor workmanship caused

certain defects and/or unreasonable delay.

BBC's motion to dismiss MID's tenth claim for relief is GRANTED WITH LEAVE TO

20

AMEND.

F.     Negligent Misrepresentation Against Western (Eleventh Claim.)

Western argues that MID's claim for negligent misrepresentation fails because MID does not "state with particularity the circumstances constituting fraud" as mandated by Fed. R. Civ. Pro. 9(b). MID rejoins that its claim meets the Rule 9(b) standard.

Fed. R. Civ. Pro. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[11] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).  A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  A motion to dismiss a claim "grounded in fraud" under Rule 9(b) for failure to plead with particularity is the "functional equivalent" of a Fed. R. Civ. Pro. 12(b)(6) motion to dismiss for failure to state a claim. *Id.* at 1107.

Rule 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727,731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (*citing Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)) (internal quotations omitted). The Ninth Circuit has explained:

---

[11] F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (*quoting Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)).

Rule 9(b) requires particularized allegations of the circumstances constituting fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth.... [W]e [have] observed that plaintiff must include statements regarding the time, place, and nature of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." ... The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc)

(*superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297 (C.D. Cal. 1996)) (italics in original).

The Interpleader Complaint states:

71. During [Western's] performance of the Contract, [Western] submitted numerous payment applications that represented that 'all Work covered by this Application for Payment is in accordance with the Contract Documents and not defective.' [Western] also represented that its work was proceeding in accordance with the Project schedule and represented the percentage and value of completed work billed in each Application for Payment was accurate.

72. These representations were false because [Western's] work was not in accordance with the Contract Documents, its work was defective and deficient, its work was not proceeding according to the Project schedule and the value of work billed was overstated for the value of actual work completed.

Interpleader Complaint at 18:25-19:6.

Western asserts that MID "fails to identify which of the 'numerous payment applications' it contends include misrepresentations, when the specific payment applications at issue were submitted, which specific work it contends was not in accordance with Contract Documents, or how the work identified in the payment application was defective." Western MTD, 11:24-27.

MID rejoins that it has alleged the "*general* time frame for when the misrepresentations occurred" and that it is not required to plead the payment applications which contains misrepresentations.

Opp'n to Western at 16:17-24. However, Rule 9(b) requires "specific" and "particularized" allegations of fraud. *Semegen*, 780 F.2d at 731.  MID's negligent misrepresentation allegations do

22

1  not meet the pleading standard.

2       MID responds, however, that its misrepresentation claim meets the relaxed standard set

3  out in *In re Equity Funding Corp. of America Securities Litig*., 416 F.Supp. 161 (C.D. Cal. 1976).

4  The district court in *Equity Funding* allowed a more general pleading to survive a motion to

5  dismiss because: (1) it was multidistrict litigation; (2) it involved several class actions; (3) the

6  fraud took place over a period of eight years; and (4) the complaint broke the defendants down

7  into groups of primary offenders and aiders and abettors and pled with particularity the basis of

8  liability of each group and its relation to the other group. 416 F. Supp. at 171–72. The case at

9  hand is not so complex as to justify a similar relaxation of Rule 9(b). This is not a multi-district

10  action, no class actions are involved, the alleged action took place over only two years, and

11  substantially less defendants are involved. Further, MID's complaint does not reach even *Equity*

12  *Funding*'s level of particularity. MID's cursory reference to misrepresentations in "numerous"

13  payment applications does not meet Rule 9(b)'s standard requiring particularized allegations of

14  the circumstances constituting fraud.

15       Western's motion to dismiss MID's negligent misrepresentation claim is GRANTED

16  WITH LEAVE TO AMEND.

17

18

19

20  G.     Declaratory Relief ("Claim" Thirteen).[12]

21       Western argues that MID's request for declaratory relief relating to Western's alleged

22  breach of contract, indemnity and "remaining obligations" should be dismissed or stricken.

23       " It is elementary that questions relating to the formation of a contract, its validity, its

24  construction and effect, excuses for nonperformance, and termination are proper subjects for

25  declaratory relief." *Caira v. Offner*, 126 Cal. App. 4th 12, 24 (*quoting Fowler v. Ross*, 142 Cal.

26

27  _____

28  [12] Declaratory relief is not an independent claim, rather it is a form of relief. *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010) (*citing McDowell v. Watson*, 59 Cal.App.4th 1155, 1159 (1997)

23

App. 3d 472, 478 (1983)). "Declaratory relief enables a party to a contract to determine his or her rights and liabilities before incurring costs and risks the party would not incur if the party's view of his or her rights and liabilities under the contract is erroneous." *Rubin v. Toberman*, 226 Cal.App.2d 319, 326 (1964).

"Complaint for declaratory relief is legally sufficient if it sets forth facts showing existence of actual controversy relating to parties' legal rights and duties under a written instrument and requests that rights and duties be adjudged." *Fowler v. Ross*, 142 Cal. App. 3d 472, 478 (1983).

The Interpleader Complaint meets these requirements as to MID's causes of action for breach and indemnity:

> []An actually controversy has arisen and now exists between MIC, [Westrn] and [BBC] concerning their respective rights, duties and obligations, in that B&V contends it is entitled to additional compensation under its Complaint and MID contends it is entitled to express indemnity, equitable indemnity, or partial equitable indemnity from [Western] and [BBC].

Interpleader Complaint at 22:7-11.

> [] Pursuant to the Contract, [Western] must defend and indemnify MID with regard to B&V's claims against MID and MID is entitled to full indemnification from [Western] for any losses and/or damages that MID may sustain by reason of [B&V's] Complaint.

> [] Pursuant to the Subcontract, and because MID is one of [Western's] 'indemnities' and third-party beneficiary of [BBC's] defense and indemnity obligations, [BBC] must defend and indemnify MID with regard to B&V's claims against MID and MID is entitled to full indemnification from [BBC] for any losses and/or damages that MID may sustain by reason of [B&V's] Complaint.

Interpleader Complaint at 8:22-9:2.

> MID is informed and believes, and on that basis alleges, [Western] will deny any indemnity obligations. Disputes have also arisen and now exist between MID and [Western] concerning their respective rights, duties and obligations, in that MID contends that [Western] breached the contract [though defective construction as alleged in the incorporated ¶¶ 22-25]. MID is informed and believes, and on that basis alleges, that [Western] will deny they breached any terms or provisions of the respective agreements.

> [] MID desires a judicial determination of the respective rights and duties of MID,

24

[Western] and [BBC], with respect to the damages claimed in the Complaint. In particular, MID desires a declaration of responsibility of [Western] and [BBC] to completely and totally defend and indemnify MID against any alleged damages, or partially indemnify MID for any alleged sums. . . MID also desires a judicial determination of the respective rights and duties of MID, and [Western] with respect to the alleged breaches of contract.

Interpleader Complaint at 22:11-20.

Further MID has asserted that adequate relief does not exist pursuant to its other claims. MID asserts that "no other adequate remedy at law" exist under the breach of contract and indemnification claims because "[t]he defective basin walls and floors [as alleged in paragraph 23] is a significant issue that requires an immediate judicial determination of the parties prospective conduct with respect to demolishing and replacing that work. More specifically, if [Western] and/or [BBC] is deemed contractually liable for the defective work, MID requires a determination as to whether it can require [Western] and/or [BBC] to demolish and replace those basins without violating the doctrine of economic waste." Opp'n to Western at 18:25- 19:2.

Accordingly, MID properly asserts declaratory relief for it breach of contract and indemnity claims. Western's motion to dismiss MID's request for relief on this basis is DENIED.

As to MID's request for a judicial determination with respect to "the remaining [contract] obligations, if any," MID may only request declaratory relief to the extent that a controversy is alleged. MID does not allege a controversy exists as to the "remaining obligations" and as such it cannot be granted relief on this basis. Any relief requested for the determination of legal rights not in controversy is DISMISSED WITHOUT LEAVE TO AMEND.

## VI. <u>CONCLUSION.</u>

For the reasons set forth above:

1. BBC and Western's motions to dismiss MID's second claim for total equitable indemnity is GRANTED WITHOUT LEAVE TO AMEND.

2.  Western's motion to dismiss MID's sixth claim for negligence and property damage is GRANTED WITH LEAVE TO AMEND.

3.  BBC's motion to dismiss MID's seventh claim for negligence and property damage is GRANTED WITH LEAVE TO AMEND.

4.  BBC's motion to strike MID's eighth claim for breach of the implied warranty of merchantability is GRANTED.

5.  BBC's motion to dismiss MID's ninth claim for breach of the implied warranty of fitness is GRANTED WITH LEAVE TO AMEND.

6.  BBC's motion to dismiss MID's tenth claim for breach of the implied warranty of workmanship is GRANTED WITH LEAVE TO AMEND.

7.  Western's motion to dismiss MID's eleventh claim for negligent misrepresentation is GRANTED WITH LEAVE TO AMEND.

8.  Western's motion to dismiss MID's request for declaration relief is DENIED as to MID's claims regarding breach of contract and indemnity.

9.  Western's motion to dismiss MID's request for declaration relief is GRANTED WITHOUT LEAVE TO AMEND as to any claims which do not allege a controversy.

MID's uncontested claims (the first, third, fourth, fifth and twelfth claim) remain.

This Court orders MID, no later than November 24, 2011, to file and serve either: (a) its First Amended Third-Party Complaint in Interpleader in compliance with this order; or (b) a statement that MID elects not to attempt to amend claims dismissed without prejudice and to proceed on the Interpleader Complaint's remaining claims.

This Court orders the third-party defendants, no later than December 15, 2011, to file and serve an answer to the Interpleader Complaint, or a response to the First Amended Third-Party Complaint, as applicable.

All parties need to understand that this District does not have the resources to involve itself in a pleadings war. MID has one chance to amend pursuant to the detailed discussion in this order. That said, Western and BBC need not file a subsequent motion to amend or strike unless the motion is strong and substantive.


IT IS ORDERED.

Dated: October 27, 2011

/s/ Lawrence J. O'Neill
United States District Judge

27