UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK & VEATCH CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>MODESTO IRRIGATION DISTRICT,<br><br>    Defendants. | 1:11-cv-0695 LJO SKO<br><br>ORDER ON MOTION TO DISMISS COUNTERCLAIM (DOC 63) |
| MODESTO IRRIGATION DISTRICT,<br><br>    Counterclaimant,<br><br>    v.<br><br>BLACK & VEATCH CORPORATION,<br><br>    Counterdefendant. | |
| AND RELATED CROSS-ACTIONS. | |

I. <u>INTRODUCTION.</u>[1]

Counterclaimant In Intervention, City of Modesto ("the City") filed its Counterclaim, naming as Counterdefendant, Black & Veatch Corporation ("B&V"). B&V moves to dismiss the

---

[1] Because oral argument was not of material assistance, the Court ordered these matters submitted on the briefs. E.D. Cal. L. R. 230 (g).

1

the City's Counterclaim on the ground that the City's claims and requests for relief are not sufficiently pled.

## II. BACKGROUND.

This action arises from the design, engineering, planning, and construction of the expansion to the existing water treatment facility, Modesto Regional Domestic Water Treatment Plant ("the Project"). Counterclaim at ¶5-7, ECF No. 26, October 19, 2011. The Modesto Irrigation District ("MID") operates the water treatment facility. With the coordination of the City, MID procured a three-part service contract ("the Contract") with B&V. *Id.* at ¶¶ 12, 15, 17 and 18. B&V was to provide the commercial design, engineering and construction management services for the Project. *Id.* at ¶ 2.

The City alleges that prior to entering into any contract with MID pertaining to Phase 2, B&V understood that the City would have a permanent beneficial interest in the output of the Project and that the treated water from Phase 2 was for the sole benefit of the City. *Id.* at ¶ 9. The City also alleges all negotiations of the Contract(s) were done in with in coordination with the City. *Id.* at ¶¶ 9, 10, 14-18.

During construction of the Project, MID and the City discovered numerous alleged defects attributable to B&V. *Id.* ¶ 24. Due to these construction defects and deficiencies, the Project was delayed past the contract deadline and has not yet been completed. *Id.* at ¶ 23.

## III. STANDARD OF DECISION.

A.  Motion to Dismiss.

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint

2

as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (*citing Twombly*, 550 U.S. 556-57).

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While the standard does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.1990).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Fed. R. Evid. 201.[2] *See*

---

[2] B&V moves unopposed for the Court to take judicial notice of the relevant agreements between the parties and the

3

*Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

## IV. DISCUSSION.

A.  Breach of Contract (Claim One).

    1.  Legal Framework.

        a.  Third Party Beneficiary Status.

Under California law, a third party may enforce a contract if the contract is "made expressly for the benefit of a third person." Cal. Civ.Code § 1559. "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821-22 (9th Cir. 1985) (*citing Strauss v. Summerhays*, 157 Cal. App. 3d 806, 816 (1984)).

A third party "need not be named or identified individually to be an express beneficiary." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1023 (*quoting Kaiser Eng'rs, Inc. v. Grinnell Fire Prot. Sys. Co.*, 173 Cal.App.3d 1050, 1055 (1985)). A third party seeking to enforce a contract may demonstrate the parties' intent to confer a benefit by showing "that he is a member of a class of persons for whose benefit it was made." *Spinks*, 171 Cal. App. 4th 1004, 1023 (*quoting Garratt v. Baker*, 5 Cal. 2d 745, 748 (1936)).

"Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Landale-Cameron Court, Inc. v. Ahonen*, 155 Cal. App. 4th at 1411 (quotation and citation omitted). "Ascertaining this intent is a

---

City. *See* B&V's Request for Judicial Notice, Exs. A-D. Federal Rule of Evidence 201(b) provides the criteria for judicially noticed facts: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The documents in question are matters of public record. *See id.* at 2-3. The Court GRANTS B&V's requests for judicial notice. *See, MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986) (a court may take judicial notice of matters of public record outside the pleadings on a motion to dismiss).

4

question of ordinary contract interpretation." *Id.*

    b.   Contract Interpretation.

The primary goal of contract interpretation is to give effect to the parties' intent as it existed at the time of contracting. Civ. Code § 1636; *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995). Intent is to be inferred, if possible, solely from the language of the written contract. Civ. Code, §§ 1638–1639; *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th at 18. However, a "rule that would limit the determination of the meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous, would either deny the relevance of the intention of the parties or presuppose a degree of verbal precision and stability our language has not attained." *Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* 69 Cal. 2d 33, 37 (1968). Accordingly, "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Civ. Code § 1647. "In determining the meaning of a written contract allegedly made, in part, for the benefit of a third party, evidence of the circumstances and negotiations of the parties in making the contract is both relevant and admissible." *Garcia v. Truck Ins. Exchange*, 36 Cal. 3d 426, 437 (1984).

  2.  Analysis.

B&V asserts that the Contract terms make no mention of the City, and therefore, the City cannot be a third party beneficiary. However, the Contract submitted by B&V shows that the City is, in fact, mentioned. First, for example, the document titled "Resolution No. 2003-14"[3] to the Agreement for Preliminary Design Services For Phase II Expansion And Optimization of the

---

[3] B&V filed its RNJ which included Exhibits A-D. *See,* RJN. Exhibit B of the RJN is described as "[t]he existence and content of the Agreement for Preliminary Design Services for Phase 2 Expansion and Optimization of the Modesto Regional Water Treatment Plant." Contained in Exhibit B is Resolution No. 2003-14. It is not entirely clear whether this is a part of the Contract; however, given the City's allegations that B&V, MID and the City worked in coordination to create the Contract terms and Project design, and the manner in which B&V presented these documents to the Court, the Court determines that Resolution No. 2003-14 is part of the Contract.

Modesto Regional Water Treatment Plant ("Preliminary Design Contract") specifically recognizes that "*the City [of Modesto]* and MID enter[ed] into a Cost Sharing Agreement that allows work to proceed on a number of conceptual developmental tasks including planning, preliminary design, and public outreach related activities for the Phase 2 expansion." RJN, Ex. B at 341319. The Resolution goes on to recognize that MID and the City together chose B&V as the design firm:

> [A] consulting engineering firm is required to design and provide construction phase services for the expansion and optimization of the [water treatment plant] and thus MID staff, in concert with staff from the City, began a comprehensive consultant selection process in November 2011 resulting in a unanimous selection of the firm Black & Veatch. . . the City's Economic Development Committee favorably reviewed the Agreement . . . and the City Council approved this Agreement and further directed MID to complete all the necessary environmental review work for this project at its December 10, 2002 meeting.

*Id.*

Second, Attachment B of to the Preliminary Design Contract is a chart containing labor estimates that is addressed to both MID and the City. RJN, Ex. B at 341326. Finally, "Resolution No. 2007-37"[4] to the Final Design Services Agreement again recognizes that the City and MID together conducted the process that lead to B&V's selection. *See* RJN, Ex. D at 325471. These contract terms at least create ambiguity as to whether the City is an intended beneficiary and causes the Court to consider the circumstances under which the contract was made.

In this vein, the City alleges that during contract negotiations B&V demonstrated it "understood that the City would have a permanent beneficial interest in the output of the Project." Counterclaim ¶ 9. The City alleges that in a November 6, 2003 letter, B&V stated it had "no doubt that the system [i.e., the Project] *proposed for the City* will work," and concluded that "[a]s the preliminary design progresses for the TR/PS, careful coordination between MID and the City

---

[4] As in footnote 3, the Court is not entirely clear whether Resolution No. 2007-37 is a part of the Contract, but given the City's allegations and the way in which B&V presented Exhibit D to the Court, the Court determines that Resolution No. 2007-37 is part of the Contract.

6

will be required to ensure proper integration of the pumping plant design flows/pressures to meet *the City's* Phase II demands." *Id.* at ¶ 9 (emphasis added). While B&V asserts that the City is not benefited by the services provided to MID through the contract – i.e., the construction of the Project – the above allegation demonstrates that the completed Project was indented to benefit the City and B&V was aware of and affirmatively acknowledged this fact.

The City also alleges that MID and B&V entered into the Preliminary Design Services Agreement "[w]ith the approval of and coordination [of] the City." *Id.* at *¶* 15. Further, that on November 17, 2003 a "Kickoff Meeting" was held in which "representatives from B&V, MID and the City" all attended in order to establish primary contacts from each entity, describe the Project's organizational structure, as well as identify milestones and key engineering elements. *Id.* at *¶* 16. Finally, The City alleges that "[w]ith approval of and in coordination with the City, MID and B&V entered into an Agreement for Construction Services which was executed on or about April 20, 2007." *Id.* at *¶* 18. These allegations which demonstrate the City's significant involvement in the design, planning and construction of the Project, are sufficient to allege that the Contract between MID and B&V was intended to benefit the City. The City has properly alleged that it is a third party beneficiary to the Contract.

Further, the facts here are unlike the cases that B&V primarily relies upon. *See e.g., Smith v. Central Ariz. Water Conservation Dist*., 418 F. 3d 1028 (9th Cir. 2005); *Klamath Water Users Protective Ass'n v. Patterson*, 204 F. 3d 1206 (9th Cir. 1999); *Martinez v. Socoma Companies, Inc.*, 11 Cal. 3d 394 (1974). In *Smith*, *Klamath*, and *Martinez* the plaintiffs were denied third-party status in large part because they were not mentioned in the contract terms; the plaintiffs could cite only "[v]ague, hortatory pronouncements in the [c]ontract" to assert their status as third-party beneficiaries. *Klamath*, 204 F. 3d at 1212. Here, the Contract specifically mentions the City, including its involvement with the selection of B&V, conceptual development of the

7

Project's design and planning, and its approval for the Project to move forward. Also, no allegation or evidence was submitted in B&V's cited cases regarding contract negotiations which demonstrate that the contract would specifically benefit the third-party. These allegations, however, exist in the instant case.

Likewise, another case relied on by B&V, *Corrugated Paper Products, Inc. v. Longview Fibre Co.*, 868 F.2d 908 (1989), is distinguishable. *Corrugated* did not grant third party beneficiary status because, *inter alia*, there was no evidence to show that negotiations and communication between the parties and the third party "alter[ed] the substance of the [contract]" to benefit the third party. *Id.* at 912-913. The defendant "was clearly not specially designing or manufacturing a product or service to meet [the third party beneficiary's] specifications." *Id.* at 913. Here, the City's allegations demonstrate that the parties and the City negotiated the Contract and Project design specifically to meet the City's needs.[5] *See e.g.,* RJN, Ex. D at 325472, MID Board Agenda Report ("[The] present contract with B&V has been amended four times to date in order to allow incremental design work to take place through authorizations from the. . . City Council.")

B&V's motion to dismiss the City's contract claim is DENIED.

B.   Negligence (Claim Two).

In order to properly assert its claim for negligence, the City must allege that a special relationship exists between B&V and the City. B&V contends that the City does not sufficiently allege a special relationship.

In *Biakanja v. Irving*, 49 Cal. 2d 647 (1958), the California Supreme Court set forth the

---

[5] B&V also argues that the City cannot be granted third-party beneficiary status because they did not receive the "actual thing" that was provided by the promisor under the contract. However, B&V does not cite any caselaw which espouses such a limited rule, and the law is not so narrow. Third party beneficiary status more broadly requires a demonstration through the contract terms and/or negotiations that the parties intended the contract to benefit the specific third party, which the City has properly done.

8

six factors that a plaintiff not in privity of contract with the defendant must establish to sustain a cause of action for negligence. The *Biakanja* criteria are as follows: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

The City's Counterclaim meets the *Biakanja* factors. For the reasons set out in Section B. 3. of this Order, the City has sufficiently alleged that the Contract was intended to affect the City; i.e., the subject of the Contract – the Project – was designed, coordinated and constructed to meet the City's demands.  This in turn bears on the second factor, foreseeability of harm resulting from a breach of the contract. Drawing all reasonable inferences from the City's allegations, B&V entered into the Contract with the intent to provide a specially-designed water treatment facility; accordingly, it is reasonably foreseeable that the breach would cause injury to the City by requiring the City to obtain treated water from other, more expensive avenues and/or sources. Increased costs for water production is a foreseeable consequence of B&V's alleged inability to perform the Contract. *See Chameleon Engineering Corp. v. Air Dynamics Inc.*, 101 Cal. App. 3d 418, 423 (1980).

The third *Biakanja* factor regarding the certainty of injury is a critical requirement. "[A]ppreciable, nonspeculative, present injury is an essential element of a tort cause of action." *Aas v. Superior Court*, 24 Cal.4th 627, 646 (2000). The two seminal cases regarding the injury required, *Aas* and *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979), have found that economic loss is a sufficient injury. *Aas* held that when the injury alleged is construction defect, those defects must have "ripened into property damage, *or at least into involuntary out-of-pocket losses*" in order to "comfortably fit the definition of 'appreciable harm.'" *Aas*, 24 Cal. 4th at 646 (internal

quotation and citation omitted; emphasis added). *J'Aire* is in accord, stating that "*economic losses such as lost earnings or profits*" are recoverable injuries in a suit for negligence. *J'Aire*, 24 Cal. 3d at 803 (emphasis added).

"Courts are reluctant to impose duties to prevent economic harm to third parties because '[a]s a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence and contracting power.'" *The Ratcliff Architects v. Vanir Construction Management, Inc.*, 88 Cal. App. 4th 595, 605 (*citing Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 403 (1992)). However, courts may "impose a duty to prevent pure economic loss when there is no privity of contract when the injured party is an intended beneficiary of a contract between the defendant and another party." *The Ratcliff Architects*, 88 Cal. App. 4 at 605 (*citing J'Aire*, 24 Cal. 3d at 804-805).

In *J'Aire*, the seminal case most closely aligned with the instant case, the tenant who was not in privity with the contractor was permitted to bring an action against the contractor to recover lost profits (involuntary out-of-pocket economic loss) because he was unable to run his business during the negligent delay in completion of the construction project. *J'Aire*, 24 Cal. 3d 799 ("appellant's complaint leaves no doubt that appellant suffered harm since it was unable to operate its business for one month"). Similarly here, the City alleges that it has incurred at least $25,000 for "the increased cost of water production" (involuntary out-of-pocket economic loss) due to the negligent delay and construction of the Project. Counterclaim ¶¶ 36, 41.

The remaining three factors also tend to favor the imposition of duty. The City has properly pled the fourth factor – closeness of connection between B&V's actions and the City's damages – by asserting that it incurred increase water production costs as the direct result of B&V's breach. *Id.* at ¶ 36. The connection between B&V's actions and the City's damages is patent. *See Chameleon*, 101 Cal. App. 3d at 423; *J'Aire*, 24 Cal. 3d. 805. The fifth factor of moral

blame may also be reasonably drawn from the City's allegations and the Contract. The City contends B&V entered into the Contract to benefit the City by constructing a facility that provides treated water for the City's residents. When a contractor knows that its construction may be put to a use that will affect the well-being of the public, then further justification for the imposition of liability exists. *See e.g., Ales-Peratis Foods Internat., Inc. v. American Can Co.*, 164 Cal. App. 3d 277, 289 (1985) (noting that imposing a duty would "discourage can manufacturers from shipping defective cans they have reason to know will be used to pack food distributed to the general public"). Finally, the sixth factor –prevention of future harm – also supports finding a special relationship. As general California policy, tortfeasors are held responsible for injuries caused through "want of ordinary care." *Chameleon*, 101 Cal. App. 3d at 423(*citing* Cal. Civ. Code § 1714 ("Every person is responsible for injuries caused by his or her lack of ordinary care.")).

Accordingly, B&V's motion to dismiss the City's negligence claim is DENIED.

C.  Declaratory Relief.

"It is elementary that questions relating to the formation of a contract, its validity, its construction and effect, excuses for nonperformance, and termination are proper subjects for declaratory relief." *Caira v. Offner*, 126 Cal. App. 4th 12, 24 (2005) (*quoting Fowler v. Ross*, 142 Cal. App. 3d 472, 478 (1983)). "Declaratory relief enables a party to a contract to determine his or her rights and liabilities before incurring costs and risks the party would not incur if the party's view of his or her rights and liabilities under the contract is erroneous." *Rubin v. Toberman*, 226 Cal. App. 2d 319, 326 (1964).

However, where there is an accrued cause of action for a past breach of contract or other wrong, declaratory relief is inappropriate. *See Canova v. Trustees of Imperial Irrigation District Employee Pension Plan*, 150 Cal. App. 4th 1487, 1497 (2007) ("Declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs"). The purpose of a

declaratory judgment is to set controversies at rest before they cause harm to the plaintiff, not to remedy harms that have already occurred. *County of San Diego v. California*, 164 Cal. App. 4th 580, 607-08 (2008); *see also Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F. 2d 938, 943 (9th Cir.1981) (a declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future."). If a party has a "fully matured cause of action for money," the party must seek damages rather than declaratory relief. *Canova*, 150 Cal. App. 4th at 1497.

B&V takes issue with the City's request for declaratory relief to the extent that its request is based on past actions by B&V. However, the City's counterlclaim does not request relief based on past relief. The Counterclaim states:

> An actual controversy exists between the City, on the one hand, and B&V, on the other hand, as to their *future* rights and obligations arising under the respective agreements. Such *future* rights and obligations include (1) MID's right to the *future* use of B&V's plans and specifications for the completion of the Project; (2) B&V's obligation to make or pay for *future* repairs of defects and deficiencies caused by B&V's conduct, in connection with a determination that such future repairs do not constitute economic waste; (3) B&V's obligation to provide for *future* warranties and/or extensions of warranties for the performance of various products, equipment, work and components; and (4) B&V's obligation to provide and/or pay for *future* monitoring of the operation of the Project, including the performance of components which are defective or deficient, and to pay for such repairs and maintenance proximately resulting from the wrongful conduct of B&V.

Counterclaim ¶ 44 (emphasis added).

Nevertheless, to the extent that the City's request for declaratory relief is based on past actions, B&V's motion to dismiss this relief is GRANTED WITHOUT LEAVE TO AMEND. To the extent that the City's request is based on actual controversy regarding the future rights and obligations arising under the Contract, B&V's motion is DENIED.

B&V also takes issue with the City's request for declaratory relief regarding MID's right to future use of B&V's plans and specifications for the completion of the Project. B&V states that the City has no right to request this relief; only MID enjoys this right. However, the City has

properly alleged that it is a third party beneficiary to the Contract. As such, its only limitation in enforcing the Contract is that it may not obtain a greater recovery than that which would have been available to the promisee. Cal. Civ. Code § 1559; *Spinks*, 171 Cal. App. 4th 1004. In requesting this declaratory relief regarding the use of B&V's plans, the City is would not be obtaining greater recovery than that which MID would be entitled to recover. Accordingly, B&V's motion to dismiss the City's request regarding B&V's plans and specifications is DENIED.

## V. CONCLUSION AND ORDER.

For the reasons set forth above:

1. B&V's motion to dismiss the City's first claim for breach of contract is DENIED.

2. B&V's motion to dismiss the City's second claim for negligence is DENIED.

3. B&V's motion to dismiss the City's request for declaratory relief is GRANTED WITHOUT LEAVE TO AMEND to the extent that the City's request for declaratory relief is based on past actions.

4. B&V's motion to dismiss the City's request for declaratory relief is DENIED to the extent that the City's request is based on actual controversy regarding the Contract's future rights and obligations.

5. B&V's motion to dismiss the City's request for declaratory relief is DENIED to the extent that the City seeks no more relief than that which is available to the Contract's promisee.

This Court orders B&V, no later than January 31, 2012, to file and serve an answer to the Counterclaim.

1  IT IS ORDERED.

Dated: January 9, 2012   /s/ Lawrence J. O'Neill

Lawrence J. O'Neill
United States District Judge