# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK & VEATCH CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MODESTO IRRIGATION DISTRICT,<br><br>　　　　Defendant.<br>_____<br>MODESTO IRRIGATION DISTRICT,<br><br>　　　　Counterclaimant,<br><br>　v.<br><br>BLACK & VEATCH CORPORATION,<br><br>　　　　Counterdefendant.<br>_____<br>AND RELATED ACTIONS.<br><br>　　　　　　　　　　　　　　　／ | CASE NO. 1:11-cv-00695-LJO-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT BLACK & VEATCH'S MOTION FOR GOOD FAITH SETTLEMENT AND INDEMNITY BAR BE GRANTED**<br><br>(Docket No. 223)<br><br>**OBJECTIONS DUE: 10 days** |

## I. INTRODUCTION

On December 31, 2012, Plaintiff/Counter-Defendant Black & Veatch ("B&V") filed an Application for Motion for Good Faith Settlement and Indemnity Bar. (Doc. 223.) Third-Party Defendant/Counterclaimant/Cross-Defendant/Cross-Complainant Western Summit Constructors, Inc. ("Western Summit") filed a Statement of Non-Opposition, and no other party has filed a responsive brief. The Court has reviewed the motion as well as the supporting documentation and finds that the matter is suitable for decision without oral argument pursuant to Rule 230(g) of the

Local Rules of the United States District Court, Eastern District of California; thus, the February 6, 2013, hearing is VACATED.

For the reasons set forth below, the Court RECOMMENDS that B&V's Motion for Good Faith Settlement and Indemnity Bar be GRANTED.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to B&V's complaint, filed on April 29, 2011, this case arises out of a contractual dispute regarding work performed during the expansion of the Modesto Regional Water Treatment Plant (the "Project"). (Doc. 1, ¶¶ 5-8.) B&V and Modesto Irrigation District ("MID") entered into a written contract, and then an amended contract, for the design and construction of the Project. (Doc. 1, ¶¶ 9-15.) B&V's complaint alleges that MID and B&V discussed amending their agreement to include further construction phase work that extended beyond the original 2009 completion date and to provide compensation for those services. (Doc. 1, ¶ 17.) B&V contends that it provided additional services throughout 2010 at MID's direction and that MID assured B&V that its requests for a contract amendment and additional compensation would be timely and fairly addressed. (Doc. 1, ¶¶ 18-31.) However, B&V was not paid for these services. (Doc. 1, ¶ 33-34.)

MID's counterclaim was filed on July 25, 2011, and alleges B&V's construction phase services commenced in June 2007 after MID's construction contract was awarded to Western Summit. (Doc. 17, ¶ 18.) During the construction phase, MID alleges that the construction was behind schedule, there were numerous engineering defects and errors attributable to B&V, and widespread quality control errors by Western Summit that were not adequately addressed by B&V in its capacity as construction manager. (Doc. 17, ¶ 19.) MID pleads that B&V's failure to fulfill its duties as the construction manager resulted in damages and a widespread overpayment by MID. (Doc. 17, ¶ 23.) As a result, in September 2010, MID suspended its contract with B&V and was required to retain other professionals to rectify the substantial problems caused by B&V. (Doc. 17, ¶ 24.)

On August 8, 2011, MID filed a complaint-in-impleader against third-party defendants Western Summit, Big B Constructors, Inc. ("Big B"); Federal Insurance Company; Fidelity and

Deposit Company of Maryland; and Travelers Casualty and Surety Company of America.[1]  The complaint-in-impleader alleges that Western Summit and Big B entered into a written subcontract agreement.  (Doc. 22, ¶ 20.)   During construction, MID discovered numerous defects and deficiencies with Western Summit and Big B's work, which substantially delayed the project and prevented its completion.  (Doc. 22, ¶¶ 23-24.)

On August 19, 2011, City of Modesto ("City") filed a motion for intervention, which was granted by the Court on October 12, 2011. (Docs. 25, 49.)  City of Modesto filed a counter-claim on October 14, 2011, alleging that the purpose of the Project was to provide water to City, and that, in exchange for paying for the construction of the Project and its maintenance, City was entitled to the entire output of treated water provided by the Project.  (Doc. 50-1, ¶ 8.)  Accordingly, City sought damages based on B&V's alleged breaches in managing the Project.  (Doc. 50-1, ¶¶ 33-36.)

On April 30, 2012, Western Summit filed a cross-claim against Siemens Industry, Inc.  fka Siemens Water Technologies Corporation ("Siemens"), alleging that Western Summit and Siemens entered into a contract for goods and special services for the delivery and installation of the membrane filtration system for the Project; the contract included an indemnification clause. (Doc. 100, ¶ 10.) Western Summit sought express, implied, and equitable indemnity from Siemens. (Doc. 100, ¶¶ 18-35.)  On June 21, 2012, Siemens answered and filed a counter-claim against Western Summit for breach of contract, alleging that Western Summit had not been paid for services provided, including the removal of the installed membrane filtration modules. (Doc. 128, ¶¶ 18-23.)

On October 2, 2012, B&V and MID respectively filed Motions for Summary Judgment, which remain pending before the District Judge Lawrence J. O'Neill.  (Docs. 193, 195.) On October 11, 2012, a Notice of Partial Settlement was filed representing that a settlement had been reached between B&V, MID, and City. (Doc. 213.)  The instant Motion for Good Faith Settlement was filed on December 31, 2012.  (Doc. 223.)

---

[1] The insurance companies have not been served and have not appeared in this action, as the appearing parties have set forth that MID's complaint-in-impleader is not yet at issue. (Doc. 57, 3:4-9.)

## III. DISCUSSION

**A.    Legal Standard**

A motion for good faith settlement is governed by California Code of Civil Procedure §§ 877 and 877.6, which apply to federal court diversity proceedings and authorizes the Court to determine whether a settlement agreement was entered into in good faith.[2]  *See Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355 (9th Cir. 1993) (en banc). In relevant part, section 877 states as follows:

> Where a release, dismissal with or without prejudice, or covenant not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligators mutually subject to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, which ever is greater.
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

Cal. Civ. Proc. Code § 877; *see also Rutgard v. Haynes*, 61 F. Supp. 2d 1082, 1085 (S.D. Cal. 1999). The legislative objectives in promulgating Section 877 were "equitable sharing of costs among the parties at fault, and . . . encouragement of settlements." *River Garden Farms, Inc. v. Super. Ct.*, 26 Cal. App. 3d 986, 993 (1972). However, "equitable sharing" does not require *equal* sharing. *Id.*

The California Supreme Court has held that "[t]he good faith provision of section 877 mandates that the courts review agreements purportedly made under its aegis to insure that such settlements appropriately balance the contribution statute's dual objectives." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 494 (1985). In considering whether the settlement is in good faith, the factors to consider include the following:

> a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence

---

[2] Section 877.6 provides that good faith settlements are subject to approval of the court through noticed motion and hearing. *See* Cal. Civ. Proc. Code § 877.6(a)(1). Section 877.6 is the procedural vehicle under which B&V brings its motion.

   of collusion, fraud, or tortuous conduct aimed to injure the interests of the nonsettling defendants.

*Id.* at 499 (citations omitted).

   A party opposing the motion for good faith settlement bears the burden of establishing a lack of good faith. *Id.* at 493; *see also* Cal. Civ. Proc. Code § 877.6(d). An opposing party "must demonstrate . . . that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Id.* at 499-500. The determination as to whether a settlement is made in good faith is a matter within the court's discretion. *Id.* at 502.

**B.**  **Terms of Settlement**

   The settlement at issue in this motion is the settlement agreement reached between B&V, MID, and City. B&V's motion represents that B&V, MID, and City participated in extensive mediation and settlement efforts and have agreed to settle the claims and allegations amongst them. B&V sets forth the following material terms of the settlement agreement:

   1.  B&V will pay jointly MID and the City $8.5 million.

   2.  B&V will assign to MID (a) its $3.0 million claim for equitable adjustment against MID, (which MID passed through to Western Summit in its impleader action, and (b) B&V's express defense and indemnity rights against Western Summit. All other B&V claims against MID and/or the City will be released and discharged.

   3.  MID and the City will release and discharge any and all claims regarding the MID-B&V Agreements and the Project.

   4.  MID will indemnify, defend, and hold B&V harmless as against any third party claims arising out of the Project, including, without limitation, MID's continued use of the B&V prepared Project drawings and specifications.

(Doc. 223-1, 5:15-6:8.)

**C.**  **Analysis**

   As set forth above, in determining whether a settlement falls within the reasonable range, the court should weigh the amount of the settlement in light of (1) the rough approximation of the plaintiff's potential recovery and the settlor's proportionate liability in view of the settlement amount; (2) a recognition that a settlor should pay less in settlement than if found liable at trial; (3) the financial conditions and insurance policy limits of the settling defendants; and (4) any evidence, or

absence of evidence, of collusion, fraud or tortious conduct between the settling parties aimed at making non-settling parties pay more than their fair share. *Tech-Bilt, Inc.*, 38 Cal. 3d at 499.

### 1. Proportionate Liability

"A determination as to the good faith of a settlement, within the meaning of section 877.6, necessarily requires the trial court to examine and weigh a number of relevant factors, one of the most important of which is the settling party's proportionate liability." *Toyota Motor Sales U.S.A., Inc. v. Super. Ct.*, 220 Cal. App. 3d 864, 871 (1990). A "settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the . . . liability to be." *Torres v. Union Pac. R. R. Co.*, 157 Cal. App. 3d 499, 508 (1984).

B&V asserts that the damages alleged by MID and City in their respective counter-claims overlap for the most part and amount to a prayer of approximately $25 million. (Doc. 223-1, 7:17-20.) B&V contends, however, that there are multiple factors and defenses in B&V's favor that could reduce MID and City's potential recovery to an amount significantly less than the alleged damages. These factors and defenses include: (1) MID's Rule 26 Disclosure Statement allocates $11.2 as B&V's alleged share of liability for the claimed Project delays and deficiencies, (2) B&V's engineering contract includes a limitation of liability in an amount not to exceed $5 million and includes a waiver of consequential damages, (3) the MID-Western Summit contract includes an obligation by Western Summit to defend and indemnify B&V, and (4) B&V has asserted in its motion for summary judgment, pending before the Court (Doc. 193), that MID and City 's contract and tort claims were barred by contract.

As such, the Court finds that the material terms of the settlement agreement set out in B&V's motion are within the reasonable range of B&V's proportionate share of comparative liability.

### 2. Settlement Amount

The Court has considered and recognizes that the settlement amount is less than the amount B&V may have paid had it been found liable. *Tech-Bilt, Inc.*, 38 Cal. 3d at 499.

### 3. Financial Conditions and Insurance Policy Limits

There are no disputes regarding B&V's financial condition and insurance policy limits. The parties agreed to the settlement terms through the assistance of counsel after arm's length

negotiations before a neutral mediator, which indicates that any ability of B&V to pay a larger amount has been balanced against the facts of the case and the degree to which B&V is liable. Therefore, the Court finds this factor does not weigh against finding that the parties have entered into a good faith settlement.

### 4. Evidence of Collusion, Fraud, or Tortious Conduct

Finally, there is no evidence of collusion, fraud, or tortious conduct aimed to injure the interests of the other remaining parties. Significantly, no opposition to B&V's motion has been filed. Further, the settlement agreement has been approved by both the MID Board of Directors and the Modesto City Council. (Doc. 223-2, Cali Decl., ¶ 5., Exh. 4.) This factor also weighs in favor of a finding that the parties have entered into a good faith settlement.

In sum, the above factors weigh in favor of granting B&V's motion for a determination of good faith settlement.

### IV. CONCLUSION AND RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1. B&V's motion for determination of good faith settlement be GRANTED; and
2. Pursuant to California Code of Civil Procedure, Sections 877 and 877.6(c), B&V is hereby discharged from all liability for any contribution, equitable comparative contribution, or partial or comparative indemnity, to the other parties including, without limitation, the named third-party defendants and/or cross-defendants to this litigation, specifically Western Summit, Big B Contractors, Inc., and Siemens Industry, Inc., f/a Siemens Water Technologies Corporation.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within ten (10) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C.

§ 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 4, 2013**                         /s/ Sheila K. Oberto
                                                                           UNITED STATES MAGISTRATE JUDGE